**TRANSCONTINENTAL INSURANCE CO., Appellant,**

v.

**Robert SMITH, Appellee.**

No. 04–03–00140–CV.

Court of Appeals of Texas, San Antonio.

Feb. 11, 2004.

Tim K. Singley, Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, L.C., Corpus Christi, for Appellant.

Bruce M. Miller, Michael W. Simpson, Law Offices of Bruce M. Miller, P.C., San Antonio, for Appellee.

Sitting: SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

Appellant, Transcontinental Insurance Company appeals the judgment in favor of appellee, Robert Smith. The jury found that Smith's heart attack constituted a compensable injury. Transcontinental challenges the sufficiency of the evidence supporting the jury's verdict, and it also asserts that the trial court erred by: (1) awarding attorney's fees and expenses and (2) denying its motion for a new trial based on the misconduct/disqualification of a juror. We affirm.

## BACKGROUND

Smith, age sixty-three,[1] worked for Diamondback Construction in San Antonio, Texas. His job responsibilities included the running of heavy equipment consisting of: large loaders, skid loaders, and rollers. Occasionally, his job responsibilities included setting and driving grade stakes. On April 17, 1998, the day Smith suffered his heart attack, he had the responsibility of driving grade stakes into the ground at the new parking lot project off South Houston Street in San Antonio. Around noon, Smith began driving grade stakes using a twelve-pound sledge hammer. He set between thirty and forty grade stakes that afternoon over a two and a half hour period. While working, he began to experience pains in his left elbow as well as some discomfort in his chest. Smith took one water break toward the end of the task before completing the job. By the time he had taken his water break and returned to the work site, he was already sweating profusely. After the crew finished driving grade stakes, Smith emptied the water truck, took it back to the storage area, got in his own truck, and drove twenty miles home. At his house, still feeling pain and discomfort, he took two aspirin and laid down on the couch. When his wife got home almost two hours later, upon seeing his condition, she took him to the emergency room. At the hospital, Smith learned

---

1. Smith's family has a history of coronary disease. His mother and brother both suffered from heart attacks prior to April 17, 1998. His mother died from her heart attack. Smith's father suffered from a stroke and his sister died of complications from diabetes. Although Smith stated he was not aware of his own condition before his heart attack, medical testimony established he has a pre- existing two-vessel coronary heart disease. A two-vessel heart disease occurs when cholesterol blocks two of the three coronary blood vessels to the heart. Smith's pre-existing two-vessel coronary heart disease consists of a 90% occluded/blocked artery and a 75% occluded/blocked artery. Both of these are considered significant blockages.

for the first time he had suffered a heart attack.

After a contested case hearing on Smith's workers' compensation claim, the hearing officer found the myocardial infraction constituted a compensable injury and Transcontinental had an obligation to pay temporary income benefits. The hearing officer concluded that the preponderance of the medical evidence showed Smith's physical labor was a substantial contributing factor to the "minor heart attack" and the pre-existing heart condition was not a substantial contributing factor. Transcontinental appealed the decision to the Texas Workers' Compensation Commission Appeals Panel (TWCCAP). The TWCCAP reversed the hearing officer, disagreeing with both conclusions. Smith subsequently filed suit in district court requesting a determination by a jury whether he has a compensable claim. The jury decided that his claim was compensable and the trial court rendered a judgment to that effect.

## SUFFICIENCY OF THE EVIDENCE

On appeal, Transcontinental challenges the legal and factual sufficiency of the evidence. In reviewing the evidence under a no-evidence point, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998). The reviewing court must determine if the evidence as a whole rises to a level that would enable reasonable and fairminded people to differ in their conclusions. *See id.* at 286; *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex.1998). The evidence presented, viewed in the light most favorable to the prevailing party, must permit the logical inference that the jury must reach. *See Associated Indem. Corp.,*

964 S.W.2d at 286. In conducting a factual sufficiency review, we must consider and weigh all the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.1998). We will only set aside the verdict if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Id.* at 407. We are not a fact-finder; therefore, we will not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence clearly supports a different result. *See id.*

Texas Labor Code section 408.008 governs the compensability of heart attacks. The Labor Code allows a claimant to recover from a compensable heart attack injury only if: (1) one can identify the attack as: (A) occurring at a definite time and place; and (B) caused by a specific event occurring in the course and scope of the employee's employment; and (2) the preponderance of the medical evidence regarding the attack indicates that the employee's work rather than the natural progression of a pre-existing heart condition or disease was a substantial contributing factor of the attack. *See* Tex. Lab.Code Ann. § 408.008(1), (2) (Vernon 1996).[2] The claimant must satisfy both criteria in order to recover for a compensable heart attack injury. *Id.*

### Definite Time & Place; Caused By a Specific Event

■ Transcontinental contends there is no evidence that Smith's heart attack was a compensable injury because it did not occur at a definite time and place and it was not caused by a specific event. More specifically, Transcontinental argues Smith's testimony, that his symptoms came on gradually, negates the definite time and place and by a specific event requirement.

2. The third requirement under section    408.008 is not applicable here.

■ A heart attack is a compensable injury under the Texas Labor Code only if certain requirements are satisfied. The first requirement is that one must identify the attack as: "(1) occurring at a definite time and place and (2) caused by a specific event occurring in the course and scope of the employee's employment." TEX. LAB. CODE ANN. § 408.008(1). Heart attack cases involving physical activity must demonstrate some type of physical strain or overexertion. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650-51 (Tex.1976); *Baird v. Texas Employers' Ins. Ass'n*, 495 S.W.2d 207, 211 (Tex.1973). The physical strain or overexertion may result from the collective efforts required in a day's work rather than a single isolated incident. *See id.; Transp. Ins. Co. v. McCully*, 481 S.W.2d 948, 950 (Tex.Civ.App.-Austin 1972, writ ref'd n.r.e.). A person suffering from a pre-existing abnormal heart condition can have a compensable injury under lesser amounts of physical strain or overexertion. *See Baird*, 495 S.W.2d at 211; *Cont'l Ins. Co. v. Marshall*, 506 S.W.2d 913, 917 (Tex.Civ.App.-El Paso 1974, no writ). However, even where there is a pre-existing heart condition that makes a person more susceptible to a heart attack, performing a task that requires no more than normal physical exertion will not make an "on the job" heart attack compensable. *Jackson v. Liberty Mut. Ins. Co.*, 580 S.W.2d 70, 71-72 (Tex.Civ.App.-El Paso 1979, writ ref'd n.r.e.).

Smith testified that he felt abnormal amounts of pain in his chest and elbow while he drove grade stakes into the ground and that he began to sweat profusely while doing the work. He also testified that these symptoms came on gradually as he performed his work and not suddenly. Smith's treating physician, Dr. Garza, testified Smith's clinical history strongly suggested that the onset of his symptoms occurred at the time of driving the stakes during his employment. Dr.

Garza also testified that the heavy physical labor of performing his job incited the initiation of his heart attack and that the heavy physical labor caused a piece of cholesterol to break loose and seal one of Smith's arteries entirely thereby causing the heart attack.

■ Smith presented medical testimony from Dr. Garza, as well as his own testimony, as to the time, place, and specific event when his heart attack occurred. We disagree with Transcontinental's assertion that Smith's testimony on cross-examination specifically negates the definite time and place and by a specific event requirement. Smith's continued heavy physical labor over the workday is sufficient to satisfy the statutory requirement that the heart attack occur during a specific event, namely while performing the heavy physical labor for his employer. Because both Smith's and Dr. Garza's testimony are sufficient to pinpoint the heart attack as occurring during the afternoon of April 17, 1998, and caused by the specific event of driving grade stakes, we conclude sufficient evidence exists, both legally and factually, to support the jury's decision.

### Cause of Heart Attack: Work or Pre-existing Heart Condition

■ Transcontinental argues the preponderance of the medical evidence regarding the cause of the heart attack does not indicate Smith's work, rather than the natural progression of a pre-existing heart condition or disease, was a substantial contributing factor of the heart attack.

The second requirement a claimant must satisfy for a compensable heart attack is "the preponderance of the medical evidence [must indicate] that the employee's work rather than the natural progression of a pre-existing heart condition or disease was a substantial contributing factor of the heart attack." TEX. LAB.CODE ANN.

§ 408.008(2). Initially we note that Texas courts have not directly addressed the substantial contributing factor requirement of section 408.008(2). Prior to 1989, there was no specific statute dealing with the compensability of heart attacks. Instead, case law addressed the compensability of heart attacks in the workers' compensation system. In 1989, the Texas Legislature enacted former Civil Statute article 8308–4.15 [3] of the Texas Workers' Compensation Act, later codified in the Texas Labor Code at section 408.008,[4] which directly addresses the compensability of heart attacks.

The case law that developed before 1989 focused on the issue of whether an employee's strenuous work activities caused the heart attack even though the employee had a pre-existing heart condition. If the strenuous work activities caused the heart attack, Texas courts held the heart attack was compensable and did not preclude compensability even if a pre-existing heart condition existed. *Henderson,* 544 S.W.2d at 652 n. 1; *Texas Employers' Ins. Ass'n v. Hayes,* 654 S.W.2d 804, 806 (Tex.App.-Houston [14th Dist.] 1983, no writ). Therefore, case law did not require an employee to be in perfect health immediately before the heart attack because heart attacks usually involve the presence of some, maybe unknown, pre-existing heart disease; instead, courts only required that the job-related strain be at least a contributing cause of the heart attack. *See Baird,* 495 S.W.2d at 210; *Blair v. INA,* 686 S.W.2d 627, 630 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.); *Northbrook Nat'l Ins. Co. v. Goodwin,* 676 S.W.2d 451, 453 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Mueller v. Charter Oak Fire Ins. Co.,* 533 S.W.2d 123, 125 (Tex. Civ.App.-Tyler 1976, writ ref'd n.r.e.). A great degree of stress, strain, or exertion was not necessary for recovery in a heart attack case, but a pre–1989 claimant had to prove some causal connection between the strain or exertion and the heart attack. *See Baird,* 495 S.W.2d at 211; *Texas Employers' Ins. Ass'n v. Jackson,* 719 S.W.2d 245, 249 (Tex.App.-El Paso 1986, writ ref'd n.r.e.); *Texas Employers' Ins. Ass'n v. Courtney,* 709 S.W.2d 382, 384 (Tex.App.-El Paso 1986, writ ref'd n.r.e.); *Kiel v. Texas Employers Ins. Ass'n,* 679 S.W.2d 656, 658 (Tex.App.-Houston [1st Dist.] 1984, no writ); *Cont'l Ins. Co. v. Marshall,* 506 S.W.2d 913, 917 (Tex.Civ.App.-El Paso 1974, no writ). Therefore, if the work incited, accelerated, or aggravated the claimant's underlying heart condition, it was a sufficient cause of the resulting heart attack for the purposes of recovering workers' compensation benefits. *Kiel,* 679 S.W.2d at 658; *see also Baird,* 495 S.W.2d at 210. Additionally, before 1989, medical testimony was not required on whether an occurrence caused a heart attack. *Ins. Co. of N. Am. v. Kneten,* 430 S.W.2d 565, 568 (Tex.Civ.App.-Waco 1968), *aff'd* 440 S.W.2d 52 (Tex.1969).

■ In 1989, with the enactment of former article 8308–4.15, the Legislature established a standard for compensability of heart attacks. Under this standard, the work can no longer be merely a contributing factor; instead, the work must be a *substantial* contributing factor to the heart attack. Neither the Legislature nor any Texas court has defined "a substantial contributing factor." However, the Workers' Compensation Commission, the agency

---

**3.** Act effective Jan. 1, 1991, 71st Leg., 2d C.S., ch. 1, § 4.15, 1989 Tex. Gen. Laws 1, 37.

**4.** The Legislature provided that it did not intend for the codification to make any substantive changes Act effective Sept. 1, 1993, 73d Leg., R.S., ch. 269, § 6, 1993 Tex. Gen. Laws 987, 1273.

charged with initially determining the compensability of workers' compensation claims, has addressed this issue. While the Worker's Compensation Commission's interpretation does not bind this court, we find its long standing and uniformly applied interpretation of this provision persuasive. *See Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 248 (Tex.1991). Since its first interpretation of this section in 1991 to the present, the Workers' Compensation Commission has held that

> where the medical evidence tends to show that both the work and preexisting heart condition were contributing factors in a heart attack, . . . the legislature intended that the claimant produce medical evidence which would, by a preponderance of the evidence, show that the work rather than the preexisting heart condition was a substantial contributing factor in the heart attack.
>
> . . .
>
> While we do not hold that the 1989 Act places a burden on a claimant of proving the negative, that is, that a preexisting heart condition was not a substantial contributing factor, such preexisting condition must be weighed or compared with the employee's work preceding the attack. The 1989 Act does not . . . preclude there being more than one substantial contributing factor in a heart attack case.

Texas Workers' Compensation Commission Appeal No. 91009, 1991 WL 335020 at *6 (September 4, 1991); *see also* Texas Workers' Compensation Appeal No. 031786, 2003 WL 22378848 at *1 (August 20, 2003). Opinions by the Commission have interpreted this to mean that more than one substantial factor can exist, so long as the work is a greater factor than the natural progression of any underlying heart condition or disease. Texas Workers' Compensation Appeal No. 031786, 2003 WL 22378848 at *1. We adopt and apply this analysis here. Accordingly, we

hold that both the work and any preexisting condition can be substantial contributing factors; however, a heart attack is compensable only where the preponderance of the medical evidence establishes that the work was the greater factor.

Here, Smith presented testimony from Dr. Garza on the cause of his heart attack. Dr. Garza testified that due to Smith's heavy physical labor, a blood clot or piece of cholesterol broke loose sealing one of Smith's arteries causing the heart attack. In response to the question of whether the work, rather than the natural progression of a pre-existing heart condition or disease, was a substantial contributing factor in causing Smith's heart attack, Dr. Garza testified:

> Clearly in Mr. Smith's medical history, he was without symptoms until he began undertaking his heavy physical labor. He was driving his stakes at work and, at that time . . . he began to suffer his symptoms of his heart attack. And though they lingered for some time even after he stopped his physical activity, the process had begun of having a heart attack, the clot had formed in that blood vessel and he had occluded . . . so yes.

Further, Dr. Garza testified that Smith may not have had the heart attack if he had not undergone such heavy physical labor. Although Dr. Garza agreed that Smith's pre-existing heart condition was a significant factor in causing his heart attack, he testified that the work initiated the heart attack and that the heart attack might not have ever occurred without the strenuous, physical labor.

Transcontinental argues that Smith's ninety percent occluded/blocked artery combined with his seventy-five percent occluded/blocked artery were sufficient by themselves to trigger a heart attack. To support its position, Transcontinental provided the testimony of Dr. Silverman. Dr.

Silverman testified that Smith could have suffered a heart attack while walking down the street, driving a car, or sitting at home watching TV. He also testified that if it were truly the work that triggered the heart attack, Smith, after working for the construction company for three years doing the same kind of work, would have suffered a heart attack sooner. Dr. Silverman disagreed with Dr. Garza's theory, that due to heavy physical labor, a blood clot or piece of cholesterol broke loose sealing one of Smith's arteries causing the heart attack. Instead of heavy physical labor, Dr. Silverman testified that the direct cause of Smith's heart attack was inadequate blood flow through the arteries due to Smith's severe heart disease. On cross-examination, Smith challenged Dr. Silverman's conclusions that the seventy-five percent occluded/blocked artery triggered the heart attack. Dr. Silverman ultimately conceded that he could only speculate based on what he usually sees and not based on Smith's own history. On further cross-examination, Dr. Silverman agreed that an increased work load could certainly play a contributing part in causing Smith's heart attack.

Both Smith and Transcontinental provided the jury with expert medical opinions of the cause of Smith's heart attack. While the evidence is conflicting, it was for the jury, and not this court, to weigh and compare the medical evidence in order to decide which contributing factor was greater. The record contains sufficient evidence, both legally and factually, to support the jury's decision that a preponderance of the medical evidence indicates the work rather than the natural progression of a pre-existing heart condition or disease was a substantial contributing factor to Smith's heart attack.

### ATTORNEY'S FEES

Transcontinental also complains the trial court improperly awarded attorney's fees because Smith is not entitled to any recovery. In the alternative, Transcontinental asserts Smith is not entitled to all court costs, but only to those expenses as defined by Rule 152.5 of the Rules of the TWCC. *See* 28 TEX. ADMIN. CODE § 152.5(b) (2001) (Tex. Workers' Comp. Comm'n, Attorney's Fees). Because we affirm the trial court's judgment as to the compensability of Smith's heart attack, we will address only the latter argument.

■■ Section 408.221 of the Texas Labor Code governs the award of attorney's fees to the workers' compensation claimant's attorney. *See* TEX. LAB.CODE ANN. § 408.221 (Vernon 1996). Section 408.221 provides the TWCC or the court must approve the attorney's fees. *Id.* § 408.221(a). Other than a twenty-five percent cap, the trial court has the discretion as to the manner and amount of the award of attorney's fees. *Texas Employers Ins. Ass'n v. Motley*, 491 S.W.2d 395, 397 (Tex.1973). The trial court must determine the amount of attorney's fees awarded in a workers' compensation case without the aid of a jury. *Id.* The fees are based on the attorney's time and expenses according to written evidence presented to the commission or court. TEX. LAB.CODE ANN. § 408.221(a). The attorney's fees come from the claimant's recovery and may not exceed twenty-five percent of that recovery. *Id.* § 408.221(b),(h). Section 408.221 requires the TWCC to provide guidelines for maximum attorney's fees for specific services in accordance with these provisions. *See id.* § 408.221(e). The TWCC rules set forth additional requirements for the submission and approval of attorney's fees and define what an attorney may or may not include as expenses in the preparation and presentation of the client's case. 28 TEX. ADMIN. CODE ANN § 152.5(a), (b). The attorney should clearly identify in an itemized list the date, nature, and amount of the expenses incurred. *Id.* § 152.5(a).

■ Smith filed a motion for approval of attorney's fees with the trial court. In his motion, he indicated the date he hired counsel and counsel's hourly fee. The record, however, does not contain an itemized list describing the nature of the expenses incurred in preparing and trying the case. Transcontinental had the burden to provide a record demonstrating an abuse of discretion. *See Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987). When such a record is not provided, we presume the evidence before the trial court was adequate to support the decision and the trial court did not abuse its discretion. *See id.* Here, in its order granting attorney's fees, the trial court states that it made its decision in reliance on the evidence and arguments presented by counsel. Based on this record, we cannot say the trial court erred by awarding the attorney's fees and expenses as it did.

## JUROR MISCONDUCT/DISQUALIFICATION

Finally, Transcontinental complains the trial court erred by denying its motion for a new trial based on the misconduct/disqualification of juror, Raymond Cesar Trevino, Jr. Transcontinental contends that due to Trevino's disqualification, his participation as a juror resulted in an invalid verdict. In the alternative, Transcontinental argues that his participation deprived it of a fundamentally fair trial.

■ A party waives the right to subsequently challenge the presence of a disqualified juror on the panel when it agrees to proceed with trial. *Palmer Well Servs. v. Mack Trucks Inc.*, 776 S.W.2d 575, 577 (Tex.1989); *Mendoza v. Varon*, 563 S.W.2d 646, 648 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.). In *Mendoza*, the parties discovered one of the jurors had a pending felony indictment during the course of the trial and agreed to allow the

juror to remain on the panel and participate in the verdict. *Mendoza*, 563 S.W.2d at 648. The court held that by urging the trial court to continue the trial, Mrs. Mendoza not only waived her right to assert error by failing to object, but she also expressly consented to the action. *Id.* Therefore, a party may not secure a reversal for the error it invited. *Id.*

■ Here, during jury deliberations, the trial judge called the attorneys from both sides into his chambers to inform them that his bailiffs had discovered Trevino had an outstanding warrant out for his arrest on a misdemeanor drunk driving charge. The judge informed the parties that he would have the bailiff take Trevino into custody at the conclusion of the trial. While the record does not contain any discussions between the parties and the judge, both parties agree in their briefs and during oral arguments that the discussion took place and they had notice of the pending misdemeanor charge. Nothing in the record shows that either party objected to the judge's plan of action. In addition, Transcontinental did not object to Trevino's qualifications or move for a mistrial on the record. Transcontinental waited until it filed its motion for a new trial after the jury returned its verdict of 10–2 in favor of Smith to object to Trevino's qualifications. Because Transcontinental knew of the misdemeanor charge against Trevino before the jury returned a verdict, it cannot complain about the error for the first time after the jury returned an unfavorable verdict. Therefore, we conclude Transcontinental has waived this issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.