COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-368-CV

TEXAS MUNICIPAL LEAGUE APPELLANTS

INTERGOVERNMENTAL RISK POOL AND AND APPELLEES

THE CITY OF THE COLONY, 

A SELF-INSURED GOVERNMENTAL ENTITY

V.

BRANDON R. BURNS AND JULIANN BURNS, APPELLEES

AS GUARDIAN FOR BRANDON R. BURNS AND APPELLANTS

------------

FROM THE PROBATE COURT OF DENTON COUNTY

------------

OPINION

------------

I.  Introduction

In this workers’ compensation case, The City of the Colony and Texas Municipal League Intergovernmental Risk Pool (TML Risk Pool)
(footnote: 1) appeal the trial court’s judgment dismissing their appeal of a workers’ compensation benefits award in favor of Brandon Burns and Juliann Burns, as guardian for Brandon Burns (collectively, Burns).  In five issues, appellants complain that the trial court improperly (1) struck the City’s petition in intervention as untimely, (2) ruled that TML Risk Pool lacked standing to appeal the workers’ compensation appeals panel’s decision, and (3) awarded attorney’s fees.  In his cross-appeal, Burns complains that the trial court abused its discretion and violated equal protection standards by not ruling on Burns’s motions for attorney’s fees until after the court had held an evidentiary hearing on the motions, even though the court approved appellants’ motions for attorney’s fees without a hearing.  We affirm.

II.  Background Facts & Procedural History

Brandon Burns was injured while performing volunteer services for the City.  At the time of the injury, the City provided its employees workers’ compensation benefits under an interlocal agreement that created a self-insurance pool among the City and other political subdivisions.
(footnote: 2)  The TML Risk Pool was the administrative agency charged with supervising performance of the interlocal agreement,
(footnote: 3) including, among other things, (1) processing and handling all workers’ compensation claims, (2) negotiating with the injured employee and his or her attorney, (3) defending the City in workers’ compensation proceedings, and (4) controlling all aspects of litigation, including retaining and supervising legal counsel and deciding whether to appeal a workers’ compensation ruling.  The express terms of the interlocal agreement provided, however, that “[a]ny suit brought or defended by [the TML Risk Pool] shall be in the name of the [City].”  

As a result of his injury, Burns filed a claim for workers’ compensation benefits from the City.  TML Risk Pool received the notice of injury and denied the claim on the ground that Burns’s intoxication or horseplay was the producing cause of the injury.  On the notice denying the claim, TML Risk Pool listed itself as the insurance carrier and the City as the employer. 

A contested case hearing followed, at which the parties stipulated that Burns was an employee of the City
(footnote: 4) and that the City provided workers’ compensation coverage through self-insurance.  After hearing the evidence, the hearing officer concluded that “the carrier is not relieved of liability” because Burns was not intoxicated and horseplay was not a producing cause of Burns’s injury.  The hearing officer’s decision and order incorrectly identify TML Risk Pool as the insurance carrier. 

TML Risk Pool appealed the hearing officer’s decision.  On August 20, 2002, a workers’ compensation appeals panel rendered a decision affirming the hearing officer’s ruling.  Although the appeals panel’s decision is styled, “Texas Municipal League Intergovernmental Risk Pool, A Self-Insured Governmental Entity v. Brandon Burns,” the decision states that “[t]he true corporate name of the self-insured is 
CITY OF THE COLONY”
 and gives the name and address of the City’s registered agent for service of process.  

TML Risk Pool decided to appeal the workers’ compensation panel’s decision to state district court.  Contrary to the interlocal agreement, however, TML Risk Pool prepared and filed a Plaintiff’s Original Petition in which it named itself as plaintiff.  Thereafter, TML Risk Pool and the City realized that the district court lawsuit had not been filed in the City’s name, as required by the interlocal agreement.  Consequently, on January 17, 2003, nearly five months after the appeals panel rendered its decision, the City filed a petition in intervention naming itself as the self-insured.  The City alleged that it “has a justiciable interest in the matters in controversy in this litigation in that it is a self-insured carrier of the claimant [Burns] and is liable for any compensation awarded to the claimant.”  

Burns moved to strike the City’s petition in intervention, to dismiss the case for lack of jurisdiction, and for sanctions.  Burns asserted that the trial court lacked subject matter jurisdiction over the case because the proper self-insured insurance carrier—the City—had not filed suit by the fortieth day after the appeals panel rendered its decision upholding the benefits award and TML Risk Pool had no standing to sue on the City’s behalf.
(footnote: 5) 

Appellants moved for leave to substitute the City for TML Risk Pool as the party-plaintiff.  In support of their motion, appellants alleged that (1) TML Risk Pool is a governmental entity that administers workers’ compensation claims on behalf of its members, (2) TML Risk Pool does not, however, insure its members, (3) the members of TML Risk Pool, including the City, are self-insured governmental entities, (4) the administrative proceedings incorrectly identified TML Risk Pool as the insurance carrier rather than the City, but the appeals panel’s final order did note that “[t]he true corporate name of the self-insured is CITY OF THE COLONY,” and (5) the City was the proper plaintiff in this case because the City was “the proper ‘insurance carrier’ as that term is defined by section 401.011(27)(C)”
(footnote: 6) of the labor code.  

Initially, the trial court denied Burns’s motions to strike and to dismiss for lack of jurisdiction but took the motion for sanctions under advisement.  The trial court granted appellants’ motion to substitute plaintiff in part and “permitted [the City] to become a plaintiff in this case,” but it refused to remove TML Risk Pool from the case, ruling instead that TML Risk Pool “will be carried as an involuntary plaintiff.”  

Thereafter, the trial court reversed its prior rulings and rendered a judgment in which it (1) struck the City’s petition in intervention on the ground that the City had not timely appealed the appeals panel’s August 2002 decision and (2) dismissed TML Risk Pool’s suit for lack of standing on the ground that TML Risk Pool was not a party entitled to judicial review under labor code section 410.252(a).  The trial court also awarded attorney’s fees to Burns’s attorneys and the attorney ad litem.  This appeal followed. 

III.  The City’s Petition in Intervention

In their first issue, appellants complain that the trial court improperly struck the City’s petition in intervention on the ground that it was untimely under labor code section 410.252(a).  Appellants contend that a party’s failure to comply with the forty-day filing deadline in section 410.252(a) does not deprive a trial court of jurisdiction over the case because the deadline is simply a statute of limitations, not a jurisdictional prerequisite.  Appellants further contend that the limitations period was tolled in this case because TML Risk Pool timely filed its lawsuit and Burns was not misled or disadvantaged by the City’s failure to timely file suit.  

If a party desires to contest a workers’ compensation appeals panel decision, the party “may seek judicial review by filing suit not later than the 40th day after the date on which the decision of the appeals panel was filed with the division.”
(footnote: 7)  An appeals panel decision regarding benefits is final in the absence of a timely appeal for judicial review.
(footnote: 8)  Therefore, the forty-day deadline is mandatory and jurisdictional.
(footnote: 9)  Nonetheless, the deadline may be equitably tolled in a misidentification case when (1) two separate, but related, legal entities use a similar trade name and (2) the suit is brought by the wrong entity, but (3) the defendant had notice of the suit and was not misled or disadvantaged by the mistake.
(footnote: 10) 

In this case, TML Risk Pool sued to contest the appeals panel decision by the forty-day deadline, but the City did not.  TML Risk Pool was the wrong entity to file suit for several reasons.  First, the express terms of the interlocal agreement provided that any suit had to be brought in the name of the City, not in the name of TML Risk Pool.  Therefore, TML Risk Pool was contractually barred by the interlocal agreement from naming itself as plaintiff in the underlying suit.

Second, as appellants alleged in their motion to substitute plaintiff, only the City was the proper plaintiff below because only the City was “the proper ‘insurance carrier’” under the labor code.  The labor code’s definition of “insurance carrier” does not include an administrative agency such as TML Risk Pool, which was created to supervise the performance of an interlocal agreement.
(footnote: 11)  Only the insurance carrier is liable for compensating an employee for work-related injuries.
(footnote: 12)  An entity that is merely responsible for administering workers’ compensation benefits on the insurance carrier’s behalf is not a proper party to a suit contesting an appeals panel decision.
(footnote: 13)  Therefore, although it was responsible under the interlocal agreement for handling litigation on the City’s behalf, TML Risk Pool was not a proper party to the underlying suit.
(footnote: 14)
 Morever, TML Risk Pool’s misidentification of itself as the plaintiff did not equitably toll the forty-day deadline for filing suit to seek review of the appeals panel decision.  TML Risk Pool and the City are not separate, but related, entities that use similar trade names.  Rather, they are two completely separate entities with different names and different purposes.  According to its mission statement, TML Risk Pool, which is located in Austin, exists to “provide Texas municipalities and other local governmental units a stable source of risk financing and loss prevention services.”  It is not a political subdivision, as appellants suggest, but is instead “an interlocal agency offering workers’ compensation . . . protection to Texas political subdivisions.”
(footnote: 15)  TML Risk Pool is managed by its board of trustees.

The City, on the other hand, is a home-rule municipality with a council-manager form of government whose address is 6800 Main Street, The Colony, Texas.  Its city council is comprised of a mayor and six council members, none of whom are on TML Risk Pool’s board of trustees.  Unlike TML Risk Pool, the City is a political subdivision responsible for extending workers’ compensation benefits to its employees.
(footnote: 16)  Therefore, the timely filing of suit by the wrong entity—TML Risk Pool—did not serve to equitably toll the filing deadline until the proper entity—the City—could be made a party to the suit.

Appellants contend that the supreme court has enunciated different tests for equitable tolling in misidentification cases depending on whether the wrong defendant is sued or whether the wrong plaintiff files suit.
(footnote: 17)  Appellants assert that, if the wrong defendant is sued, the supreme court held in 
Bass
 that limitations is tolled only if (1) there are two separate, but related, entities that use similar trade names and (2) the correct entity had notice of the suit and was not misled or disadvantaged by the mistake.
(footnote: 18)  Appellants further assert that, if the wrong plaintiff files suit, the supreme court held in 
Ealey
 that the only requirement for equitable tolling of limitations is that the defendant was not misled or disadvantaged by the mistake.
(footnote: 19)  We disagree.

In 
Ealey
, the party that mistakenly filed suit was the parent company of the proper party, its wholly-owned subsidiary, and both companies were insurance companies.
(footnote: 20)  Thus, the party that mistakenly filed suit and the proper plaintiff were separate but related entities.  In determining that limitations was equitably tolled, the supreme court considered both the close relationship and similarities between the proper and improper plaintiffs and the lack of prejudice to the defendant, not just the lack of prejudice.
(footnote: 21)  In this case, TML Risk Pool and the City are not separate but related entities.  Therefore, assuming, without deciding, that the supreme court has enunciated slightly different tests for equitable tolling depending on whether the misidentified party is the plaintiff rather than the defendant, appellants do not satisfy either test.

For all of these reasons, we hold that the trial court did not err by striking the City’s petition in intervention on the ground that the City did not timely appeal the appeals panel’s August 2002 decision affirming the benefits award to Burns.  We overrule appellants’ first issue.

IV.  TML Risk Pool’s Standing

In their second issue, appellants complain that the trial court improperly dismissed TML Risk Pool’s suit for lack of standing on the ground that TML Risk Pool was not a party entitled to judicial review under labor code section 410.252(a).  Appellants assert that TML Risk Pool provides workers’ compensation benefits on behalf of the City and that both the City and TML Risk Pool are “insurance carriers” as that term is defined in labor code section 401.011(27)(D).  

As we discussed in the previous section, TML Risk Pool is not an “insurance carrier” as that term is used in the labor code.  Further, appellants’ assertions are directly contrary to TML Risk Pool’s position in the trial court.  In its motion to substitute plaintiff, TML Risk Pool averred that it did not insure the City, but merely “administered” workers’ compensation claims on behalf of the City, which was a self-insured entity.  

Standing pertains to a person’s justiciable interest in the suit.
(footnote: 22)  A party has standing to sue when it is personally aggrieved, regardless of whether it is acting with legal authority.
(footnote: 23)  A person may seek judicial review under section 410.252(a) only if it has exhausted its administrative remedies and “is aggrieved by a final decision of the appeals panel.”
(footnote: 24)
 An association has standing to sue on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization’s purpose;  and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
(footnote: 25)  Regarding the third prong of the associational standing test,  whether an association has standing to invoke the court’s remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.
(footnote: 26)  If the association seeks a declaration, injunction, or some other form of prospective relief, “it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured,” and the third prong of this test is satisfied.
(footnote: 27)  But if the association seeks damages on behalf of its members or must otherwise prove the members’ individual circumstances to obtain relief, participation of the individual members is required, and the third prong is not satisfied.
(footnote: 28)
 In this case, TML Risk Pool is not personally aggrieved by the appeals panel decision because it is not liable for the workers’ compensation benefits awarded to Burns.  Only the City, as the self-insured carrier, is liable,
(footnote: 29) and the appeals panel decision so states.
(footnote: 30)  TML Risk Pool does not assert that the self-insured pool will be harmed unless the appeals panel decision is reversed.  Further, assuming, without deciding, that the associational standing doctrine applies to workers’ compensation appeals, TML Risk Pool did not seek a declaration, injunction, or other relief on behalf of its members in general.  Instead, it filed suit on behalf of only one individual member, the City.  To prevail in its suit, TML Risk Pool would have to prove the City’s individual circumstances—that the workers’ compensation benefits for which the City is liable were improperly awarded to Burns.  Thus, the City’s individual participation is required, and the third prong of the associational standing test is not satisfied.  Accordingly, the trial court properly dismissed TML Risk Pool’s suit for lack of standing.  We overrule appellants’ second issue.

V.  Attorney’s Fees

A.  Admission of Burns’s Attorneys’ Testimony Regarding Fees

In their third issue, appellants complain that the trial court improperly ordered the City to pay attorney’s fees to Burns’s attorneys because the attorneys were not parties to the lawsuit and the fee award was based on inadmissible evidence.  

Section 408.221(c) of the labor code provides in pertinent part as follows:

An insurance carrier that seeks judicial review . . . of a final decision of the appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits is liable for reasonable and necessary attorney’s fees . . . incurred by the claimant as a result of the insurance carrier’s appeal, if the claimant prevails on an issue on which judicial review is sought by the insurance carrier.
(footnote: 31)

The trial court determined that Burns was the prevailing party under section 408.221(c).
(footnote: 32)  Appellants do not contest this determination.  Further, they did not complain in the trial court that the fees should have been awarded to Burns rather than his attorneys.  Therefore, this complaint is waived on appeal.
(footnote: 33)
 Next, appellants complain that the fee award was improper because it was based on inadmissible evidence.  Appellants assert that the trial court should have excluded the attorneys’ testimony regarding their fees because Burns failed to produce the attorneys’ internal “case notes” and billing records regarding their fees in response to appellants’ requests for disclosure and for production of documents. 

Burns does not dispute either that appellants requested the documents or that he failed to provide them.  Indeed, one of Burns’s attorneys, Kay Goggin, admitted to the trial court that appellants were never given the records.  She explained, however, that Burns had never seen the records, either, because the documents were not billing statements.  Instead, the records were kept internally by Goggin and her co-counsel, Barbara Lombrano-Williamson, to aid them in preparing their applications for attorney’s fees.  Goggin stated that her reasons for not producing the records were (1) she feared that she would “give away strategy” by producing the records, (2) the labor code requires the trial court to award attorney’s fees solely based on written evidence,
(footnote: 34) (3) Burns had submitted three motions for attorney’s fees, supported by Goggin’s affidavits, and no one had objected to them, and (4) the trial court was approving appellants’ fee requests without requiring their internal records. 

The trial court excluded Burns’s attorneys’ internal billing records but allowed the attorneys to testify regarding their attorney’s fees.  Appellants complain that this testimony should have been excluded because it was based, at least in part, on the excluded internal billing records.

A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, unless the court finds that (1) there was good cause for the failure to timely disclose or (2) the failure will not unfairly surprise or prejudice the other parties.
(footnote: 35)  “The salutary purpose of [this rule] is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush.”
(footnote: 36)  The burden of establishing good cause or lack of unfair surprise or prejudice is on the party seeking to introduce the evidence.
(footnote: 37)  The trial court has discretion to determine whether the offering party has met its burden;
(footnote: 38) however, a finding of good cause or the lack of unfair surprise or unfair prejudice must be supported by the record.
(footnote: 39)
 In this case, although Burns did not disclose his attorneys’ internal records in response to appellants’ request for disclosure,
(footnote: 40) Burns did identify Goggin and Williamson as experts who would testify concerning the reasonableness and necessity of his attorney’s fees.  Further, long before he sought to admit Goggin’s and Williamson’s testimony regarding the fees, Burns submitted three motions for attorney’s fees—in May 2003, August 2003, and January 2005.
(footnote: 41)  In all three motions Burns asserted that, if he prevailed against appellants in their appeal, appellants would be liable for his attorney’s fees under labor code section 408.221(c).  Burns supported each of the motions with Goggin’s affidavit,
(footnote: 42) in which she listed the number of hours that she and Williamson had each expended on the case to date, their hourly rate and how it compared to rates for similar work in Dallas, the amount of legal assistant time and the hourly rate, and the amount of expenses incurred to date.  Goggin’s affidavits also set out her credentials and experience as an attorney handling workers’ compensation cases and listed the specific matters that she and Williamson had handled for Burns with regard to this case:  prosecuting Burns’s workers’ compensation claim at the administrative phase of the proceeding, defending against appellants’ appeal of the panel decision to the trial court, handling many legal issues, engaging in extensive discovery, taking two depositions, and filing a motion to dismiss. 

Based on this information, the trial court ruled that Burns had disclosed the fact that Goggin and Williamson would testify as experts concerning their attorney’s fees and the fact that Burns would request that his fees be assessed against the insurance carrier if he prevailed against appellants in their appeal.  The trial court further ruled that Burns had disclosed many of the matters about which Goggin and Williamson proposed to testify, such as the amount of fees they had requested, the number of hours they claimed to have worked, and their hourly rates.  Accordingly, the trial court concluded that appellants would not be unfairly surprised by Goggin’s and Williamson’s testimony.

These rulings are, as we have discussed, supported by the record.  Moreover, the trial court reasonably could have concluded that appellants were not “ambushed”
(footnote: 43) by Burns’s failure to disclose the internal billing records, but instead had been provided sufficient information to enable them to properly cross-examine Goggin and Williamson regarding the reasonableness of and necessity for their fees.  Therefore, we hold that the trial court did not abuse its discretion by allowing Goggin and Williamson to testify, despite the fact that Burns did not properly respond—or object—to appellants’ request for disclosure.
(footnote: 44)  We overrule appellants’ third issue.

B.  Attorney Ad Litem’s Fees

In their fourth issue, appellants complain that the trial court improperly awarded attorney’s fees to Chris Raesz, the attorney ad litem, because there is no statutory authority to support the award, neither Burns nor Raesz filed any pleadings seeking to recover Raesz’s fees from appellants, and Raesz was not disclosed as an expert witness on attorney’s fees, nor were any documents produced during discovery supporting his testimony concerning fees. 

Raesz filed a “Certificate of Attorney” and a “Supplemental Certificate of Attorney” in which he certified that he had, as Brandon Burns’s court-appointed attorney ad litem, devoted a total of 73.8 hours of time and incurred $6.06 in expenses while representing Burns in this case.  He requested a total of $14,766.06 in attorney’s fees and expenses.  Raesz supported each of these certificates with a detailed list of the services he had provided.  He did not, however, state in the certificates that he was seeking these fees and costs from appellants, nor did Burns file a pleading specifically seeking these fees and costs from appellants.

The trial court’s judgment orders that Raesz, “as court appointed Attorney Ad Litem for the above incapacitated person [i.e., Brandon Burns], shall be paid the total sum of $9,006.06 as a statutory commission pursuant to § 241(a) or 665(b) of the Texas Probate Code . . . by the City of the Colony.” 

Section 241(a) of the probate code provides that “[e]xecutors, administrators, and temporary administers of an estate” are entitled to receive a commission as compensation for their services performed in the administration of the estate.
(footnote: 45)  Section 665(b) provides that “[t]he guardian or temporary guardian of an estate is entitled to reasonable compensation on application to the court.”
(footnote: 46)  Raesz was Burns’s attorney ad litem, not an executor, administrator, or guardian of his estate.  Therefore, neither section 241(a) nor section 665(b) authorized the “statutory commission” that the trial court awarded Raesz.

Nonetheless, probate code section 34A provides that each attorney ad litem appointed “to represent the interests of a person having a legal disability . . . is entitled to reasonable compensation for services in the amount set by the court and to be taxed as costs in the proceeding.”
(footnote: 47)  Section 622(a) provides that “[t]he laws regulating costs in ordinary civil cases apply to a guardianship matter unless otherwise expressly provided for by this chapter.”
(footnote: 48)  Texas Rule of Civil Procedure 131 provides that “[t]he successful party to a suit shall recover of his adversary all costs incurred therein.”
(footnote: 49)  The underlying case was decided by the probate court as a matter ancillary to Burns’s guardianship proceeding.  Burns pleaded for costs of court and was the successful party at trial.  Nothing in the chapter of the probate code governing guardianships provides for the taxing of Raesz’s fees other than as costs under rule 131.  Therefore, the trial court was authorized to assess Raesz’s fees and expenses against appellants.
(footnote: 50)
 Finally, assuming, without deciding, that Burns should have designated Raesz as an expert witness and provided documentation during discovery supporting his fees, we note that the trial court held two hearings, four months apart, on Raesz’s fee applications.  Appellants were put on notice at the first of those hearings that Raesz was seeking his fees from appellants, that he would testify concerning his fees, and of the content of his testimony.  Further, over a month before the first hearing, appellants had received a copy of Raesz’s initial “Certificate of Attorney,” to which was attached an exhibit detailing the bulk of the services for which Raesz was requesting fees.  In addition, the trial court continued the first hearing on Raesz’s fee request to give appellants time to controvert Raesz’s testimony.  In light of these things, the trial court reasonably could have concluded that Burns’s failure to designate Raesz as an expert witness or to provide discovery responses documenting his fees did not unfairly surprise or prejudice appellants.
(footnote: 51)  Accordingly, the trial court did not abuse its discretion by allowing Raesz to testify concerning his fees.  We overrule appellants’ fourth issue.

C.  Attorney’s Fees for Post-Trial Work

In their fifth issue, appellants contend that the trial court erred in awarding Burns additional attorney’s fees for post-trial work because there is no evidence to support the award.
(footnote: 52)  

The trial court rendered its final judgment on July 21, 2005, in which it  awarded Burns attorney’s fees incurred through May 11, 2005.  Thereafter, on October 7, 2005, Burns filed a motion for supplemental attorney’s fees under labor code section 408.221(c), which were incurred between May 12, 2005 and October 3, 2005.  The motion was supported by Goggin’s affidavit, which listed the services Goggin and Williamson had provided, the number of hours they had each worked on the case between May 12 and October 3, their hourly rates, and the expenses they had incurred during that time.  Attached to Goggin’s affidavit were her and Williamson’s curricula vitae setting forth their qualifications and experience, as well as additional documentation listing in detail the services provided and expenses incurred.  On October 20, 2005, the trial court entered an order approving the fees and expenses and ordering the City to pay them.  

An attorney’s fee award under section 408.221 must be based on written evidence presented to the court.
(footnote: 53)  In approving an attorney’s fee, the court shall consider (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal services properly, (4) the fee customarily charged in the locality for similar legal services,  (5) the amount involved in the controversy, (6) the benefits to the claimant that the attorney is responsible for securing, and (7) the experience and ability of the attorney performing the services.
(footnote: 54)  Goggin’s affidavit, coupled with the supporting documentation, is sufficient evidence to establish these factors and support the trial court’s fee award.  Accordingly, we hold that the evidence is legally sufficient to support the order awarding post-trial attorney’s fees and expenses.
(footnote: 55)  We overrule appellants’ fifth issue.

VI.  Burns’s Cross-Appeal

In his cross-appeal, Burns complains that the trial court abused its discretion and violated equal protection standards by not ruling on Burns’s motions for attorney’s fees until after it had held an evidentiary hearing on those motions, even though the court approved appellants’ motions for attorney’s fees without a hearing. 

Trial court error does not require reversal of the trial court’s judgment unless it probably caused the rendition of an improper judgment or probably caused the appellant from presenting the case to the court of appeals.
(footnote: 56)  Assuming, for argument’s sake, that the trial court erred as Burns contends, Burns does not explain how the trial court’s error probably resulted in the rendition of an improper judgment.  The trial court’s judgment awards Burns $87,328.59 for reasonable and necessary attorney’s fees and expenses incurred from September 25, 2002 through May 11, 2005.  This award includes 400 hours of attorney time at the rate of $200 per hour.
(footnote: 57)  Although the trial court did not award Burns all of the attorney’s fees that he requested,
(footnote: 58) Burns does not explain how the award would have been higher if the trial court had ruled on his motions for attorney’s fees without first holding an evidentiary hearing.  For instance, Burns does not contend that the trial court improperly ruled that some of the fees he requested were not reasonable or necessary.
(footnote: 59)  Because the record does not show that the trial court’s holding of an evidentiary hearing before ruling on Burns’s motions for attorney’s fees probably resulted in the rendition of an improper judgment, we overrule Burns’s issues on cross-appeal.
(footnote: 60)
VII.  Conclusion

Having overruled all of the parties’ issues on appeal and cross-appeal, we affirm the trial court’s judgment.

WILLIAM H. BRIGHAM

JUSTICE

PANEL A:  DAUPHINOT and GARDNER, JJ. and BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment)

DELIVERED:  November 22, 2006

FOOTNOTES
1:
For simplicity, we often refer to these parties collectively as “appellants.”

2:
As a political subdivision of the State of Texas, the City was required to extend its employees workers’ compensation benefits by (1) becoming a self-insurer; (2) providing insurance under a workers’ compensation insurance policy; or (3) entering into an interlocal agreement with other political subdivisions providing for self-insurance.  
Tex. Lab. Code Ann.
 §§ 504.001(3), 504.011 (Vernon 2006); 
see also
 
Tex. Gov’t Code Ann.
 § 2259.031 (Vernon 2000) (providing that a governmental unit may establish a self-insurance fund to protect itself and its employees from any insurable risk).

3:
See
 
Tex. Gov’t Code Ann.
 § 791.013(a) (Vernon 2004) (“To supervise the performance of an interlocal contract, the parties to the contract may . . . create an administrative agency.”).

4:
The interlocal agreement authorized the City to extend statutory workers’ compensation benefits to all volunteers.  
See
 
Tex. Lab. Code Ann.
 §§ 504.011, .012(a) (Vernon 2006) (providing for same).

5:
See
 
Tex. Lab. Code Ann.
 § 410.252(a) (Vernon 2006) (providing that a party may seek judicial review by filing suit not later than the fortieth day after the date on which the decision of the appeals panel was filed with the division).

6:
Section 401.011(27)(C) has since been renumbered as subsection (D).  
See
 Act of May 28, 2003, 78th Leg., R.S., ch. 275, § 2, 2003 Tex. Gen. Laws 1207, 1207 (current version at 
Tex. Lab. Code Ann.
 § 401.011(27)(D) (Vernon 2006)).  Both former subsection (C) and current subsection (D) define “insurance carrier” as “a governmental entity that self-insures, either individually or collectively.”  
Tex. Lab. Code Ann.
 § 401.011(27)(D).

7:
Tex. Lab. Code Ann.
 § 410.252(a).

8:
Id.
 § 410.205(a).

9:
LeBlanc v. Everest Nat’l Ins. Co.,
 98 S.W.3d 786, 789 (Tex. App.—Corpus Christi 2003, no pet.); 
Johnson v. United Parcel Serv.,
 36 S.W.3d 918, 921 (Tex. App.—Dallas 2001, pet. denied); 
Old Republic Ins. Co. v. Warren,
 33 S.W.3d 428, 432 (Tex. App.—Fort Worth 2000, pet. denied
); 
Boone v. St. Paul Marine & Fire Ins. Co.,
 968 S.W.2d 468, 470 (Tex. App.—Fort Worth 1998, pet. denied); 
Morales v. Employers Cas. Co.,
 897 S.W.2d 866, 868 (Tex. App.—San Antonio 1995, writ denied); 
see also Ealey v. Ins. Co. of N. Am.,
 660 S.W.2d 50, 52 (Tex. 1983) (holding that the twenty-day filing deadline in the predecessor to section 410.252(a) was a general statute of limitations with which compliance was required to invoke the trial court’s jurisdiction).

Relying on 
Dubai Petroleum Co. v. Kazi,
 12 S.W.3d 71 (Tex. 2000), appellants urge us to hold that the forty-day deadline is merely a limitations period rather than a jurisdictional requirement.  In 
Kazi,
 the supreme court held that the plaintiff’s failure to satisfy the statutory prerequisites of civil practice and remedies code section 71.031 in a wrongful death case did not deprive the trial court of subject matter jurisdiction over the case, but merely affected the plaintiff’s right to obtain relief under the statute.  
Id.
 at 76 (overruling 
Mingus v. Wadley,
 115 Tex. 551, 285 S.W. 1084 (1926)).  
Kazi
 was not, however, a workers’ compensation case, nor did it involve the failure to timely file suit following an administrative proceeding, and the supreme court has not overruled its holding in 
Ealey
 that the deadline for appealing an appeals panel decision is jurisdictional.  
See
 660 S.W.2d at 52.  Therefore, we decline to apply 
Kazi
 to this case.  
But see Tex. Dep’t of Transp. v. Beckner,
 74 S.W.3d 98, 103 (Tex. App.—Waco 2002, no pet.)
 
(holding, based on 
Kazi,
 that the forty-day filing deadline in section 410.252(a) is merely a limitations period, not a jurisdictional requirement).  Moreover, even if the forty-day deadline were only a statute of limitations, the City’s petition in intervention would be barred as untimely for the reasons we discuss herein.

10:
See Ealey,
 660 S.W.2d at 51, 53 (holding that the filing deadline was tolled where the parent company filed suit rather than the subsidiary, but the defendant was not misled or disadvantaged by the mistake); 
Sanchez v. Aetna Cas. & Sur. Co.,
 543 S.W.2d 888, 890 (Tex. Civ. App.—San Antonio 1976, writ ref’d n.r.e.) (same); 
see also Flour Bluff ISD v. Bass,
 133 S.W.3d 272, 274 (Tex. 2004) (holding that the statute of limitations is not tolled in a misidentification case unless two separate, but related, entities that use a similar trade name are involved—even if no one is misled by the mistake).

11:
Tex. Gov’t Code Ann.
 § 791.013(a).  The labor code’s definition of “insurance carrier” includes only the following:

(A)   an insurance company;

(B)   a certified self-insurer for workers’ compensation insurance;

(C)   a certified self-insurance group under Chapter 407A [which excludes public employees and governmental entities, 
see
 
Tex. Lab. Code Ann.
 § 407A.002(b) (Vernon 2006)]; or

(D) a governmental entity that self-insures, either individually or collectively.

Tex. Lab. Code Ann.
 § 401.011 (27).  

12:
Id.
 § 406.031(a) (Vernon 2006).

13:
See Bass,
 133 S.W.3d at 273 (holding that a third-party administrator is not a proper party to such a suit).  Although TML Risk Pool was not a third-party administrator, 
see
 
Tex. Ins. Code Ann.
 § 4151.002(16) (Vernon 2006), for the reasons stated herein, we believe 
Bass’s
 holding applies to this situation.  
See also, Johnson,
 36 S.W.3d at 920 (holding that the employee and the insurance carrier were the only parties with an interest in the outcome of judicial review under section 410.252, because the insurance carrier was liable for compensation of the employee’s injury).

14:
Indeed, in its motion for leave to substitute the City as plaintiff below, TML Risk Pool alleged, “[T]he Commission’s decision identifies the Colony as the self-insured, ie., [sic] the only party that could appeal.”  

15:
The labor code’s definition of a “political subdivision” responsible for extending workers’ compensation benefits does not include either an administrative agency created to supervise an interlocal agreement or a self-insurance pool.  
Tex. Lab. Code Ann.
 § 504.001(3)–(4).

16:
Id.
 §§ 504.001(3), .011.

17:
We are unpersuaded by appellants’ suggestion that this is a misnomer case rather than a misidentification case.  Misnomer occurs when the plaintiff misnames either itself or the correct defendant, but the correct parties are involved.  
Enserch Corp. v. Parker,
 794 S.W.2d 2, 4-5 (Tex. 1990);  
Torres v. Johnson,
 91 S.W.3d 905, 908 (Tex. App.—Fort Worth 2002, no pet.).  As we discuss herein, the correct parties were not involved in this case because the proper party plaintiff—the City—did not timely file the underlying suit.

18:
Bass,
 133 S.W.3d at 274.

19:
See Ealey,
 660 S.W.2d at 53.

20:
Id.
 at 51.

21:
Id.
 at 51, 53.

22:
Cadle Co. v. Lobingier,
 50 S.W.3d 662, 669 (Tex. App.—Fort Worth 2001, pet. denied) (op. on en banc review).

23:
Nootsie, Ltd. v. Williamson County Appraisal Dist.,
 925 S.W.2d 659, 661 (Tex. 1996).

24:
Tex. Lab. Code Ann.
 § 410.251 (Vernon 2006); 
Ins. Co. of State of Pa. v. Orosco,
 170 S.W.3d 129, 132  (Tex. App.—San Antonio 2005, no pet.).

25:
Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
 852 S.W.2d 440, 447 (Tex. 1993); 
Wyly v. Preservation Dallas,
 165 S.W.3d 460, 463-64 (Tex. App.—Dallas 2005, no pet.).

26:
Tex. Ass'n of Bus.,
 852 S.W.2d at 448.

27:
Id.

28:
Id.

29:
Tex. Lab. Code Ann.
 § 406.031(a); 
Johnson,
 36 S.W.3d at 920.

30:
Johnson,
 on which appellants rely, does not hold otherwise.  The only parties to the appeals panel decision in that case were the actual insurance carrier and the employee.  36 S.W.3d at 920.

31:
Tex. Lab. Code Ann.
 § 408.221(c) (Vernon 2006).

32:
See
 
Orosco,
 170 S.W.3d at 133-34 (holding that the workers’ compensation claimant was the prevailing party under section 408.221(c) because he obtained a dismissal of the insurance company’s workers’ compensation appeal based on lack of standing); 
see also
 
Dean Foods Co. v. Anderson,
 178 S.W.3d 449, 454 (Tex. App.—Amarillo 2005, pet. denied) (holding that the workers’ compensation claimant was the prevailing party under section 408.221(c) because the insurance carrier’s nonsuit of its appeal rendered the appeals panel decision final and enforceable).

33:
See
 
Tex. R. App. P.
 33.1(a); 
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g).
 

34:
“Except as otherwise provided, an attorney’s fee under this section is based on the attorney’s time and expenses according to written evidence presented to . . . the court.”  
Tex. Lab. Code Ann.
 § 408.221(b) (Vernon 2006); 
see also
 
Transcont’l Ins. Co. v. Smith,
 135 S.W.3d 831, 838 (Tex. App.—San Antonio 2004, no pet.) (stating that the attorney’s time and expenses must be established by written evidence).

35:
Tex. R. Civ. P.
 193.6(a).

36:
Alvarado v. Farah Mfg. Co.,
 830 S.W.2d 911, 914 (Tex. 1992)  (applying former rule 215(5), the predecessor to rule 193.6).

37:
Tex. R. Civ. P.
 193.6(b); 
IAC, Ltd. v. Bell Helicopter Textron, Inc.,
 160 S.W.3d 191, 202 (Tex. App.—Fort Worth 2005, no pet.).

38:
Alvarado,
 830 S.W.2d at 914.

39:
Tex. R. Civ. P.
 193.6(b).

40:
Burns was not required to disclose the records in response to appellants’ request for production of documents because that request only asked Burns to produce documents “evidencing any and all invoices, billing statements or other documents that evidence the attorneys’ fees 
that have been billed to you
 by any attorney representing you in this matter.”  [Emphasis supplied.]  Goggin testified that Burns was never sent any bills.  

41:
Goggin and Williamson testified regarding their fees on May 12, 2005. 

42:
Goggin submitted a separate affidavit to support each motion.

43:
See
 
Alvarado,
 830 S.W.2d at 914.

44:
See
 
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985) (holding that a trial court does not abuse its discretion unless it acts arbitrarily or unreasonably, without
 reference to any guiding rules or principles), 
cert. denied
, 476 U.S. 1159 (1986).  
Comerica Bank-Tex. v. Hamilton,
 No. 05-93-01804-CV, 1997 WL 421214 (Tex. App.—Dallas July 28, 1997, no writ) (not designated for publication), on which appellants rely, does not require a different result.  
Comerica Bank
 was decided under former rule 215(5), which required exclusion of the undisclosed evidence unless the proponent of the evidence established good cause for the nondisclosure—regardless of whether the other party was unfairly surprised by the nondisclosure.  
Id.
 at *3.

45:
Tex. Prob. Code Ann.
 § 241(a) (Vernon 2003).

46:
Id.
 § 665(b).

47:
Id.
 § 34A.

48:
Id. 
§ 622(a).

49:
Tex. R. Civ. P.
 131.

50:
In light of this holding, we need not address appellants’ complaint that Burns did not file a pleading seeking Raesz’s fees from appellants.  
See
 
Tex. R. App. P.
 47.1 (providing that the court of appeals need address only the issues raised that are necessary to the disposition of the appeal).

51:
See
 
Tex. R. Civ. P.
 193.6(a).

52:
Appellants also complain that the award is improper because Burns failed to obtain leave of court to reopen the evidence, Goggin’s affidavit submitted in support of the fee application was hearsay, and appellants were deprived of due process because the trial court entered the order approving the fees without providing appellants notice and an opportunity to be heard.   These complaints are waived because appellants did not raise them in the trial court.  
See
 
Tex. R. App. P.
 33.1(a); 
Bushell
, 803 S.W.2d at 712
. 

53:
Tex. Lab. Code Ann.
 § 408.221(b); 
Transcont’l Ins. Co.,
 135 S.W.3d at 838.

54:
Tex. Lab. Code Ann.
 § 408.221(d) (Vernon 2006).

55:
See
 
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
 (both discussing legal sufficiency standard of review). 

56:
Tex. R. App. P.
 44.1(a).

57:
In comparison, the trial court awarded appellants $67,193.50 for attorney’s fees and expenses incurred between September 1, 2002 through December 31, 2004, at rates of $125 and $150 per hour. 

58:
Burns requested approximately $117,066 in attorney’s fees for pretrial services rendered between September 2002 and May 11, 2005.  The trial court awarded Burns all the attorney’s fees and expenses he requested for post-trial work, but this amount is not included in the trial court’s judgment because the order approving those fees was issued after judgment was rendered. 

59:
See
 
Tex. Lab. Code Ann.
 § 408.221(c) (providing that the prevailing claimant is entitled to reasonable and necessary attorney’s fees, as determined by the court based on the factors set out in section 408.221(d)).

60:
See
 
Tex. R. App. P.
 44.1(a)(1).  Burns does not argue that the trial court’s actions prevented him from properly presenting his case to our court.