Mrs. Manuel MENDOZA, Individually and as next friend for her minor daughter, Andrea Mendoza, Appellant,

v.

Dr. Harold H. VARON, Appellee.

No. 19403.

Court of Civil Appeals of Texas, Dallas.

Feb. 17, 1978.

Rehearing Denied March 22, 1978.

Charles M. Wilson, III, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellant.

Jerry P. Jones, Robert D. Campbell, Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

ROBERTSON, Justice.

Mrs. Manuel Mendoza, individually and as next friend of her minor daughter, Andrea Mendoza, sued Dr. Harold H. Varon, seeking damages for injuries sustained by Andrea as a result of Dr. Varon's alleged medical malpractice. A take-nothing judgment was rendered upon a jury verdict that found that Dr. Varon was not negligent in his treatment of Andrea, and Mrs. Mendoza now appeals. We affirm.

The chain of events underlying the present dispute began when Mrs. Mendoza took her daughter, Andrea, to her pediatrician for treatment of a rash on her leg. During that visit, Andrea was seen by another physician who, after noting Andrea's obesity and obtaining an elevated blood pressure reading, referred her to Dr. Varon for treatment. After examining Andrea, Dr. Varon prescribed a combination of drugs which was apparently intended to reduce Andrea's weight without blood pressure stimulation. After a few weeks of treatment, Andrea began to experience nausea, which became increasingly severe after several months on continued medication. The testimony regarding Dr. Varon's knowledge and reactions to Andrea's difficulties is in conflict. Shortly before treatment by Dr. Varon was discontinued, Andrea's nausea attacks began to occur more frequently, and often included violent vomiting and stomach spasms which lasted throughout the night. According to expert testimony adduced at trial, the result of this repeated vomiting and nausea was an inflammation and scarring of the sphincter valve between Andrea's stomach and esoph-

agus. This inflammation and scarring allegedly limited the effectiveness of the valve so that it could no longer keep the contents of the stomach from entering the esophagus. The entry of stomach contents produced further scarring, which, in turn, led to further regurgitation. At trial, Mrs. Mendoza claimed that Andrea's condition resulted from Dr. Varon's negligence in prescribing treatment for various unjustified conditions, prescribing the particular combination of drugs for the treatment period, failing to monitor Andrea's response to treatment, and in failing to discontinue or reduce the drug therapy after learning of Andrea's nausea.

The appeal presents four basic issues: first, we must decide whether the trial court erred in overruling Mrs. Mendoza's motion for mistrial when one of the jurors on the panel was disqualified pursuant to article 2133(6) of the Texas Revised Civil Statutes; second, we must determine whether the trial court erred in excluding testimony that Dr. Varon and one of his expert witnesses were insured by the same insurance company, and that the expert's insurance premiums would be affected by any judgment rendered for Mrs. Mendoza; third, we must decide whether portions of material which underlay the testimony of Dr. Varon's expert witness was improperly excluded from evidence; and finally, we must determine whether the jury's findings of no negligence are against the great weight and preponderance of the evidence.

### The Motion for Mistrial

Mrs. Mendoza's first argument is that the trial court erred in overruling her motion for mistrial when one of the jurors was disqualified under the provisions of article 2133(6) of the Texas Revised Civil Statutes. On the fourth morning of the trial, the court was informed that sheriff's deputies were present with an arrest warrant for one of the jurors. The alleged offense was a felony. According to Mrs. Mendoza's arguments, the juror was disqualified to serve under the provisions of article 2133(6), which provides that, in order to be a competent juror, a person "must not be under indictment or other legal accusation of theft or any felony," and the trial court erred in allowing the trial to continue.

Whatever the merits of this argument may be in other cases, we conclude that Mrs. Mendoza has waived her right to present it here. After being informed of the warrant, the trial judge advised counsel that he would discharge the juror and proceed to trial with eleven jurors. However, after discussing the potential problems of continuing the trial with an eleven-member panel when a 10–2 verdict is permissible, counsel for both parties agreed that the trial should proceed without discharging the disqualified juror. The trial court honored the agreement and the sheriff's officers were asked to wait until the verdict was returned and the jury discharged before making the arrest. Mrs. Mendoza did not move for a mistrial based upon the disqualification until an adverse 10–2 verdict had been returned. By urging the court to continue the trial, Mrs. Mendoza not only waived her right to assert error by failing to object, but also expressly consented to the action; a party may not secure reversal for an error that she invited. *Dickson v. J. Weingarten, Inc.,* 498 S.W.2d 388 (Tex.Civ. App.—Houston [14th Dist.] 1973, no writ); *Yaeger v. Long Bros. Drilling Co.,* 147 S.W.2d 276 (Tex.Civ.App.—San Antonio 1941, writ ref'd).

■ Although Mrs. Mendoza urges that the doctrine of waiver is not available to defeat the rights of the *minor* in this case, we cannot accept this contention. Rule 44 of the Texas Rules of Civil Procedure provides that a next friend or her attorney may settle suits and agree to judgments "and such judgments, agreements and compromises, when approved by the court, shall be forever binding and conclusive upon the party plaintiff in such suit." If the next friend is authorized to settle and agree to *judgments* on the minor's behalf, surely she can also make binding strategic decisions in an effort to secure relief. We recognize that the next friend may not agree to anything which benefits her individual claim at

the expense of the minor's right to recover; see *Lowery v. Berry,* 153 Tex. 411, 269 S.W.2d 795, 797 (1954); *cf. Greathouse v. Fort Worth & Denver City Ry. Co.,* 65 S.W.2d 762 (Tex.Com.App.1933, holding approved) (next friend cannot agree to judgment under circumstances where his interest conflicts with that of the minor, and record shows that agreement was fraudulently induced); *Wright v. Jones,* 52 S.W.2d 247 (Tex.Com.App.1932, holding approved) (next friend's attorney cannot waive issuance and service of citation on minor); however, there is no evidence in this case that Mrs. Mendoza's decision to proceed with trial was designed to further her individual claim to the detriment of her daughter's rights. The interests of Mrs. Mendoza and her daughter were not in conflict, and the record shows that, at the time the decision to proceed was made, both counsel felt that it was in the best interest of *all* parties to retain the juror on the panel despite his technical disqualification. Under these circumstances, we hold that Mrs. Mendoza's agreement to proceed with the trial waived any right to subsequently challenge the presence of the disqualified juror on the panel, either in her individual capacity or as next friend of her minor daughter.

### Insurance

■ As her second argument, Mrs. Mendoza urges that the trial court erred in excluding testimony that Dr. Varon and one of his expert witnesses were insured by the same insurance company. She asserts that this exclusion violated the rule that facts tending to show interest or bias on the part of a witness are admissible even though they disclose that the defendant may be protected by insurance. *See South Texas Natural Gas Gathering Co. v. Guerra,* 469 S.W.2d 899, 914 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); *Barton Plumbing Co. v. Johnson,* 285 S.W.2d 780, 781 (Tex.Civ.App.—Galveston 1956, writ ref'd); *Aguilera v. Reynolds Well Service, Inc.,* 234 S.W.2d 282 (Tex.Civ.App.—San Antonio 1950, writ ref'd). However, the rule established by these cases is substantially more limited than that urged here.

In each of the cases, the witness was either an agent, employee or owner of the defendant's liability insurer. The holdings thus properly state the established rule that the relevancy of showing that a witness is an employee or agent of the defendant's liability insurer outweighs the danger of prejudice from injecting the element of insurance into the proceedings. *See* 2 McCormick and Ray, Texas Law of Evidence § 1539 (2d ed. 1956); McCormick, Evidence § 40, at 83, v. 5 (1954); *see also* Annot., 4 A.L.R.2d 761, 779 (1949).

In the present case, however, the witness had no direct interest in the outcome of the litigation, as would an agent, owner or employee of the defendant's insurer. While it is true that a large judgment against any doctor will probably affect the insurance rates of other physicians, this interest is remote, and any proof of bias based upon that interest is outweighed by the prejudice caused by informing the jury of the defendant's insurance protection. Accordingly, this case falls within the rule that testimony calculated to inform the jury of the defendant's insurance coverage is inadmissible, *Rhoden v. Booth,* 344 S.W.2d 481, 487 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.), and the trial court did not err in excluding this line of inquiry.

### Exclusion of the Letters

■ Mrs. Mendoza next argues that the trial court erroneously excluded from evidence certain letters written by experts who testified at trial. The letters were furnished to Dr. Bailey, an expert witness for Dr. Varon, by Dr. Varon's attorneys. According to Mrs. Mendoza's argument, Dr. Bailey testified that he relied upon the letters in formulating his opinion, and the letters were thus admissible to show the basis for his opinion. Even assuming the admissibility of the items, however, their exclusion was not reversible error. Each of the doctors who wrote the letters was present and testified at trial, and Mrs. Mendoza's counsel was given full opportunity to develop and question their testimony. Substantially all of the admissible evidence con-

tained in the letters was elicited from the authors by direct and cross-examination. Any error in excluding evidence is harmless when the excluded matter is merely cumulative of facts already in evidence. *Bolin Oil Co. v. Staples,* 496 S.W.2d 167 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.); *Louis v. Parchman,* 493 S.W.2d 310 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.). Since hypothetical questions based upon previous testimony could have been used to cross-examine Dr. Bailey even though the letters were excluded, Mrs. Mendoza's right to cross-examination was not prejudiced.

On oral argument, Mrs. Mendoza's counsel argues that the exclusion also denied him the opportunity to cross-examine Dr. Bailey regarding possible bias against Mrs. Mendoza. The letters contained numerous remarks which strongly disapproved of Dr. Varon's treatment of Andrea, together with various inflammatory remarks derogating Dr. Varon's competence as a physician. According to counsel's argument, these remarks may have prejudiced Dr. Bailey against Mrs. Mendoza's claim and the exclusion of the letters erroneously precluded cross-examination on this subject. We cannot agree with this contention.

The conduct and extent of cross-examination is entrusted to the sound discretion of the trial court, and its ruling will not be disturbed unless it is arbitrarily and unreasonably made. *Austin Road Co. v. Ferris,* 492 S.W.2d 64, 74 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.); *Texas Employers' Ins. Ass'n v. Garza,* 308 S.W.2d 521, 523 (Tex.Civ.App.—Amarillo 1958, writ ref'd n. r. e.). Although some of the letters strongly disapproved of Dr. Varon's treatment of Andrea and included various other derogatory remarks, we cannot say that Dr. Bailey necessarily would have been biased against Mrs. Mendoza because of those statements. Indeed, if these letters influenced Dr. Bailey at all, they are more likely to have prejudiced him in *favor* of Mrs. Mendoza, than against her. Since they were sharply critical of Dr. Varon, any limited value these statements would have had for cross-examination was more than offset by their prejudicial nature. Consequently, we cannot say that the trial court abused its discretion in precluding these inquiries.

### The Evidentiary Challenges

As her final argument, Mrs. Mendoza urges that the trial court erred in rendering judgment upon the jury's answers to Special Issue No. 1 because the answers were so against the great weight and preponderance of the evidence as to be manifestly unjust. In response to Special Issue No. 1, the jury found that Dr. Varon was not negligent in:

(1) prescribing treatment for labile hypertension without sufficient medical basis to do so;

(2) prescribing treatment for secondary aldosteronism without sufficient basis to do so;

(3) prescribing the types and/or combination of drugs prescribed for the period of time prescribed;

(4) failing to monitor the patient's response to treatment; or

(5) failing to discontinue and reduce drug therapy upon learning that the patient was complaining of nausea.

Mrs. Mendoza has a heavy burden to discharge under this argument, for she must demonstrate that the verdict was contrary to the great weight of evidence adduced at trial so as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1952). While her assertions properly invoke the fact finding power of this court, *Traylor v. Goulding,* 497 S.W.2d 468 (1973), this power is very limited. We may not set aside a jury verdict merely because the evidence is conflicting, or because we might have reached a different result from that attained by the jury. *Carter v. Carter,* 5 Tex. 93, 101–102 (1849); *Ryan v. Morgan Spear Associates, Inc.,* 546 S.W.2d 678, 685 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). The evidence relating to each finding will be examined separately.

### Prescribing Treatment for Labile Hypertension

■ The jury found that Dr. Varon was not negligent in prescribing treatment for

labile hypertension (intermittent high blood-pressure). Mrs. Mendoza argues that the evidence clearly demonstrates the injustice of this finding, citing the testimony of her expert witness, Dr. Eichenwald, and that of Dr. Bailey, an expert witness for Dr. Varon. Dr. Eichenwald testified that he found no evidence of labile hypertension in Dr. Varon's notes; neither did he find evidence of hypertension in the notes of Andrea's previous physician. Dr. Bailey agreed with this conclusion. Dr. Eichenwald further testified that a finding of hypertension would not conform to the accepted standards of practice in the community.

Against this evidence, we must consider the testimony of Dr. Varon and Dr. Mahaney. Dr. Varon testified that Andrea was referred to him by another physician who informed him of Andrea's obesity and alarmingly high blood pressure readings. According to Dr. Varon, Andrea's first blood pressure reading at his office was elevated, although it returned to normal later in the examination. Dr. Varon testified that, at the time of diagnosis, he was under the impression that Andrea had exhibited recurrent tendencies toward high blood pressure readings, and that he had received this impression from conversations with the referring physician. Even Dr. Eichenwald, Mrs. Mendoza's expert witness, admitted that the readings obtained upon Andrea's initial examination were consistent with a diagnosis of labile hypertension, assuming that Andrea's medical history disclosed intermittent high blood-pressure.

Dr. Varon's diagnosis is supported by the testimony of Dr. Mahaney, who stated that *both* readings obtained in Dr. Varon's initial examination of Andrea were hypertensive readings, considering Andrea's age. He further testified that Dr. Varon's diagnosis was reasonable under the circumstances.

While the evidence relating to the diagnosis of labile hypertension is in conflict, the resolution of this conflict was within the province of the jury. Their finding of "no negligence" is not against the great weight and preponderance of the evidence.

### Prescribing Treatment for Secondary Aldosteronism

■ The jury's second finding was that Dr. Varon was not negligent in prescribing treatment for secondary aldosteronism (excessive hormonal secretion by the adrenal gland in response to another disorder). Again, Drs. Eichenwald and Bailey testified that Dr. Varon's notes contained no evidence supporting a diagnosis of secondary aldosteronism, and Dr. Eichenwald further testified that Dr. Varon's diagnosis did not meet the standard of care expected of physicians in this community. According to Dr. Eichenwald, Dr. Varon's failure to isolate and treat the underlying disorder which caused the aldosteronism was also not in accord with local practice.

On the other hand, Dr. Varon testified that he diagnosed secondary aldosteronism on Andrea's initial visit, and based his diagnosis upon a finding of edema (excess fluid retention in the body). Dr. Varon noted the presence of "swelling" on his progress reports, and testified that he indicated the presence of edema by this notation. He testified that frequently no cause can be isolated for secondary aldosteronism, and that this was especially true for women with fluid retention problems in association with obesity.

Dr. Mahaney testified that a finding of edema and Andrea's historical condition of tiredness were both consistent with a diagnosis of secondary aldosteronism, and that Dr. Varon's diagnosis was reasonable under local standards. He further stated that Andrea's weight loss of seventeen pounds in one week would confirm Dr. Varon's initial impression of edema, and that the extraordinary loss would also be consistent with a diagnosis of secondary aldosteronism.

Again, the evidence is merely conflicting, and, therefore, we cannot say that the jury's finding of "no negligence" was against the great weight and preponderance of the evidence.

### Prescribing the Types or Combination of Drugs

■ The jury's third finding was that Dr. Varon was not negligent in prescribing the

types and/or combination of drugs for the period of Andrea's treatment. The drugs prescribed for Andrea were dyazide, aldactone, slow-k, and preludin. Dr. Bailey, witness for Dr. Varon, testified that he would not have recommended the combination of drugs prescribed in Andrea's case. Although Mrs. Mendoza argues that Dr. Bailey also testified that the prescribed combination was not in accord with local standards, his testimony regarding that inquiry is ambiguous, in that he later acknowledged that he really lacked the knowledge to answer that question. Similarly, Dr. Bailey stated in his deposition that the prescription of the combined medication was "reprehensible", but later reversed his position upon learning of Dr. Varon's oral instructions to restrict the intake of one of the drugs. Contrary to Mrs. Mendoza's arguments, even if Dr. Varon did not modify his prescriptions and intended their continued use, this does not negate his giving of oral advice regarding intake.

Dr. Eichenwald testified that the prescribed combination of drugs violated community standards of practice, and particularly noted that the use of preludin, an amphetamine, in a patient with hypertension, such as Andrea, was dangerous. This was because the amphetamine *increases* blood pressure. Dr. Eichenwald stated that the combination of the four prescribed drugs, or any two of them, could cause nausea, and that it was this drug therapy which caused Andrea's nausea. In his opinion, Dr. Varon's treatment constituted "conscious indifference" to Andrea's welfare.

Dr. Webb, the physician who treated Andrea following her treatment by Dr. Varon, testified that he was amazed at the variety of drugs that Andrea was taking. He further noted his confusion regarding Dr. Varon's prescription of dyazide and aldactone, potassium conservatives, in combination with a potassium supplement. He testified that such a combination was not in accord with community practice.

In support of his drug treatment, Dr. Varon testified that the prescribed combination of dyazide, preludin and aldactone reduced both excess fluid and weight without blood-pressure stimulation. According to Dr. Varon, the reason for prescribing slow-k, a potassium supplement, was the major fluid loss expected with the use of dyazide and aldactone. Although dyazide and aldactone are designed to reduce body fluid without substantial potassium loss in most patients, Dr. Varon testified that the combination therapy often produces effects which are difficult to project from the single effect of each drug alone. Presumably, one of these effects was a reduction in the potassium conserving effectiveness of the two fluid-reducing drugs, dyazide and aldactone. According to Dr. Varon, the combination of dyazide with aldactone is thought to be "very mild" in potassium-conserving qualities, and, in his experience, potassium loss has been more common than potassium excess. He further testified that the use of hypertension drugs such as dyazide and aldactone simultaneously with the amphetamine, preludin, would offset the tendencies toward higher blood-pressure while allowing appetite suppression.

Although Dr. Mahaney testified that he did not totally agree with Dr. Varon's treatment techniques, and that he considered Dr. Varon's drug combination "unusual", he concluded that Dr. Varon's overall approach was reasonable. According to Dr. Mahaney, the dosage of slow-k potassium supplement prescribed by Dr. Varon was small, an amount similar to the potassium contained in two bananas. He testified that most physicians who prescribed fluid-reducing medication would prescribe potassium supplements, and that fluid-reducing drugs may be prescribed over long periods of time.

Again, we cannot say that the jury's finding was against the great weight of the evidence. Although we may have reached a different result under the same evidence, that is not a basis for reversal on appeal.

Failing to Monitor Response to Treatment

■ The jury's fourth finding was that Dr. Varon was not negligent in failing to monitor Andrea's response to treatment.

Andrea had only four appointments with Dr. Varon over the five-month treatment period. Mrs. Mendoza testified Dr. Varon first learned of Andrea's nausea and other symptoms on the third visit, in September 1975, at which time Mrs. Mendoza complained of Andrea's problems. According to her testimony, Dr. Varon did not respond to her complaints or change his prescription scheme at that time. Andrea's nausea became increasingly severe in December, and Mrs. Mendoza made a fourth appointment in January, 1976. She testified that she informed Dr. Varon about the severity of Andrea's problems at that appointment and that Dr. Varon only "shrugged and said it could have been something she ate."

Dr. Varon, however, disputes these assertions of his indifference. According to his testimony, he advised Andrea to reduce her intake of medication and to take antacids if her problems continued. He stated that he gave this advice at the third visit at which Mrs. Mendoza first complained of Andrea's problems. Dr. Varon further testified that, from the beginning of Andrea's treatment, he made it clear that Mrs. Mendoza was to telephone him if Andrea needed assistance. However, Andrea admitted on cross-examination that neither she nor Mrs. Mendoza ever tried to call Dr. Varon to inform him of her difficulties.

The major risk associated with the drug therapy was hyperkalemia (high serum potassium), and Dr. Varon testified that he ran a serum-potassium test on Andrea's third visit in September, 1975. At that time, she was not hyperkalemic. Mrs. Mendoza was concerned with the cost of testing, and had advised Dr. Varon that she did not want any tests conducted unless they were absolutely necessary. Dr. Mahaney testified that, in view of Mrs. Mendoza's limited financial resources, Dr. Varon's monitoring of Andrea's conditions was reasonable under local community standards.

The jury's finding on this issue is not against the great weight of the evidence. It was within the jury's province to accept the testimony supporting Dr. Varon's characterization of the facts over that urged by Mrs. Mendoza.

### Failing to Discontinue or Reduce Drug Therapy

■ The final jury finding was that Dr. Varon was not negligent in failing to discontinue or reduce drug therapy upon learning that Andrea was complaining of nausea. Dr. Eichenwald testified that he normally discontinued medication as soon as a patient reported nausea. However, Dr. Varon testified that, pursuant to Andrea's complaints at her September, 1975 appointment, he instructed her to reduce her intake of medication. Neither Mrs. Mendoza nor Andrea contacted Dr. Varon again until January, 1976, even though Andrea's nausea had substantially increased well before that appointment. Significantly, the issue asks whether Dr. Varon was negligent in failing to discontinue *or reduce* Andrea's drug therapy; since Dr. Varon testified that he instructed Andrea to *reduce* her intake, the jury was entitled to believe him, especially since he was not contacted for further treatment until after Andrea's condition had become much more severe. We cannot say that the jury's finding of no negligence was against the great weight and preponderance of the evidence.

Affirmed.