In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00009-CR

                                                ______________________________

 

 

                                  DANNY RAY MCCRARY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CR00850

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Danny Ray
McCrary appeals the revocation of his community supervision for the underlying
offense of driving while intoxicated, third or more, on the sole ground that
the underlying information “alleged an offense that occurred outside [of] the
applicable statute of limitations.”  The
State argues that limitations were tolled by a prior indictment, which was
voluntarily dismissed by the State with the notation “will reindict.”  McCrary responds that, because “any facts
tolling the applicable statute of limitations must . . . be pled in the
indictment,” the trial court was without jurisdiction to hear the dispute since
the latter indictment failed to include such facts.[1]  See Tex. Code Crim. Proc. Ann. art. 12.05
(Vernon 2005).  Finding that McCrary has
waived this issue, we affirm the trial court’s judgment.

If
the defendant does not object to a defect, error, or irregularity of form or
substance in an indictment or information before the date on which the trial on
the merits commences, he waives and forfeits the right to object to the defect,
error, or irregularity and he may not raise the objection on appeal or in any
other postconviction proceeding.

 

Tex. Code Crim. Proc.
Ann. art. 1.14(b) (Vernon 2005). 
Implicit within this rule is that the offense charged must be one for
which the trial court has subject-matter jurisdiction.  Teal v.
State, 230 S.W.3d 172, 181 (Tex. Crim. App. 2007).

            While
McCrary admits that he made no objection to the indictment below, he argues
that the indictment failed to confer subject-matter jurisdiction, because the
alleged offense was committed outside of the applicable statute of limitations,
and that this case should be analyzed for fundamental error.  Limitations is a defense; it is not
jurisdictional.  Tita v. State, 267 S.W.3d 33, 36 (Tex. Crim. App. 2008); State v. Yount, 853 S.W.2d 6, 8 (Tex.
Crim. App. 1993).

            McCrary
cites Studer v. State, 799 S.W.2d 263
(Tex. Crim. App. 1990).  Studer, however, subverts McCrary’s
cause.  That case defined the statute of
limitations defense as a “substance defect” which, according to Article 1.14 of
the Texas Code of Criminal Procedure, must be raised before trial.  Id. at
267.  Studer
opined

the substance defect is no longer
considered to be one of a “fundamental” nature, in the sense that fundamental
means no jurisdiction was conferred, and the conviction on such a charging
instrument would not be reversed for a lack of jurisdiction in the trial
court.  This reasoning stands
independently of the last sentence of Art. V, § 12 which states jurisdiction is
conferred upon presentment and which further supports the notion that a
substance defect will not deprive a court of jurisdiction.

 

Id. at 271–72 n.11.

 

            The
conclusion reached in Studer, that
such matters must be raised before trial, is further supported by Article
27.08(2) of the Texas Code of Criminal Procedure, which provides that a
defendant may object to the substance of an indictment “if it appears from the
face thereof that the prosecution of the offense is barred by the applicable
statute of limitations.”  Tex. Code Crim. Proc. Ann. art.
27.08(2) (Vernon 2006); see Tita, 267
S.W.3d at 37.

            In
this case, because McCrary failed to assert the limitations defense in the
trial court, the defense was forfeited.  Ex parte Smith, 178 S.W.3d 797, 803
(Tex. Crim. App. 2005); Proctor v. State,
967 S.W.2d 840, 844 (Tex. Crim. App. 1998); see
Tex. R. App. P. 33.1.  We overrule McCrary’s sole point of error due
to lack of preservation.  Yount, 853 S.W.2d at 8. 

            We affirm
the trial court’s judgment.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          May
24, 2011  

Date Decided:             May
25, 2011

 

Do Not Publish

 

 

 











[1]For
reasons stated within this opinion, we do not address the issue of whether the
first indictment tolled the statute of limitations.  See
Hernandez v. State, 127 S.W.3d 768, 771–72 (Tex. Crim. App. 2004) (tolling
can occur where subsequent indictment alleges same conduct, same act, or same
transaction as alleged in prior indictment).







Taylor
Foundry Co. v. Wichita Falls Grain Co.
, 51 S.W.3d 766, 770 (Tex. App.––Fort
Worth 2001, no pet.); McDaniel, 875
S.W.2d 485 (citing Pittman v. City of Amarillo, 598 S.W.2d
941, 944 (Tex. App.––Amarillo 1980, writ ref’d n.r.e.)).  The Moores’ easement originated from an
express grant with a specific description. 
Their rights are paramount to the extent of the grant.  Williams
v. Thompson, 152 Tex. 270, 256 S.W.2d 399, 403 (1953).  

            The
basic principles of contract construction and interpretation are applied when
considering an express easement’s terms. 
Marcus Cable, 90 S.W.3d at
700.  The contracting parties’
intentions, as expressed in the grant, determine the scope of the
easement.  Id. at 701 (quoting Restatement (Third) of Property (Servitudes)
§ 4.1 (2000) (providing that an easement “should be interpreted to give effect
to the intention of the parties ascertained from the language used in the
instrument, or the circumstances surrounding the creation of the servitude, and
to carry out the purpose for which it was created”).  The question of whether an access easement
must remain “free from gates and bars depends upon the terms of the grant, its
purpose, the nature and situation of the property, and the manner in which it
is used” unless the easement’s language provides direction otherwise.  Gerstner
v. Wilhelm, 584 S.W.2d 955, 958 (Tex. App.––Austin 1979, writ dism’d) (trial
court did not abuse its discretion in requiring servient estate to remove gates
from easement providing access to otherwise landlocked property) (citing Arden v. Boone, 221 S.W. 265 (Tex. Comm’n
App. 1920, judgm’t approved)); see Calvert, 875 S.W.2d at 485. 

            We
first look to the grant and its purpose. 
In this case, all five tracts were borne from a single acquisition of
111 acres.  Because all tracts north of
tract #2 did not have access to a public roadway, they were granted “a
non-exclusive right-of-way for purposes of ingress and egress between a public
road and the tract conveyed and described herein.”  Additionally, the easement provided that the
grantor and his assigns “shall have the non-exclusive right to use any portion of this easement that lies within
the tract conveyed herein.”  (Emphasis
added.)  Because the gates and fences
were built on specifically described easement property, grantees were
improperly barred from using these portions of the easement.  Ferrara’s actions in building a barbed wire
fence on one end of the easement, a gate on another end of the easement which
remained locked, in felling logs across the easement to make it impassable, and
in denying access to grantees of the easement for a period of three years,
could certainly be considered as contrary to the purpose of the easement as
expressed within the grant.  At trial,
Ferrara appeared to believe the Moores had no right to an easement and only “IP
[International Paper Company] had legal access on deed for that easement.”  Ferrara did not attempt to show that the Moores’
use of the easement would impair or interfere with his use of the
property.  

            We
will also consider the nature and situation of the property as it sheds light
on the intention of the parties as expressed in the deed.  When the easement was granted, no gates,
fences, or other obstacles were placed across the roadway.  It was openly used for ingress and egress
from 1985 until Ferrara’s obstacles were built in 2006.  There is nothing in the record to suggest that
there are uses for the easement property other than to provide access to
landlocked property owners.  Where, as
here, an easement is granted to provide abutting landowners access to a
roadway, and no gates existed prior to the grant of the easement, “it is evident
access to the roadway was to be unobstructed.” 
Calvert, 875 S.W.2d at 485
(finding made in absence of deed language specifying dominant estate had free
and unrestricted access);[2]
 Hilburn
v. Providian Holdings, Inc., No. 01-06-00961-CV, 2008 WL 4836840, at **1, 4
(Tex. App.––Houston [1st Dist.] Nov. 6, 2008, no pet.) (mem. op.) (holding
servient estate had no right to close or lock gate which existed prior to
creation of nonexclusive access easement because it interfered with purpose of
easement); Burns v. McDaniel, 158 S.W.2d
826, 827 (Tex. Civ. App.––Eastland 1942, no writ).[3]  

            Michael
Moore testified that he cannot travel down the easement to his property without
running over Ferrara’s gate, jumping over stumps, and finally breaking through
a six-foot barbed wire fence wired to a post. 
We find that the trial court did not err as a matter of law in its
interpretation of the deed and the parties’ intent.  Contrary to the motion for new trial alleging
the court was “without legal authority” to do so, the trial court could enjoin
Ferrara from “erecting or placing gates, fences, posts, barriers, wires,
chains, locks, logs, or any other impediments or obstacles . . . on the
Easement.”[4]
 Ferrara’s first two points of error are
overruled.[5]  

III.       Challenge
to the Court’s Findings of Fact and Conclusions of Law

            A.        Standard
of Review 

            Findings of fact entered in a case
tried to the bench “are of the same force and dignity as a jury’s answers to
jury questions.”  .39 Acres v. State, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008,
pet. denied) (citing Anderson v. City of
Seven Points, 806 S.W.2d 791, 794 (Tex. 1991)).  We review the findings of fact by the same
standards that are applied in reviewing the legal or factual sufficiency of the
evidence supporting a jury’s answer to a jury question.  Id. (citing Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994)).

            The
test for legal sufficiency is “whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.”  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We will credit evidence favorable to the
Moores if a reasonable judge acting as a fact-finder could, and will disregard
contrary evidence unless a reasonable judge could not when making this
determination.  Id.; Ramsay v. Tex. Trading
Co., 254 S.W.3d 620, 625 (Tex. App.—Texarkana 2008, pet. denied).  As long as the evidence falls within the zone
of reasonable disagreement, we will not substitute our judgment for the
judgment of the trial judge.  Ramsay, 254 S.W.3d at 625 (citing Wilson, 168 S.W.3d at 822).  In this case, the court is the sole judge of
the credibility of the witnesses and weight given to their testimony.  Id.
(citing Wilson, 168 S.W.3d at
819).  Although we consider the evidence
in a light most favorable to the challenged findings, indulging every
reasonable inference that supports them, we may not disregard evidence that
allows only one inference.  Id. (citing Wilson, 168 S.W.3d at 822).

            When
considering a factual sufficiency challenge to a jury’s verdict, we must
consider and weigh all of the evidence, not just that evidence which supports
the trial court’s judgment.  Id.  (citing
Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998)).  We will set aside the judgment only if it is
so contrary to the overwhelming weight of the evidence that it is clearly wrong
and unjust.  Id. (citing Ellis, 971
S.W.2d at 407; Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986)).  Because we
are not a fact-finder, we will not pass on the witnesses’ credibility or
substitute our judgment for the judge’s, even if the evidence would clearly
support a different result.  Id. (citing Ellis, 971 S.W.2d at 407).

            B.        Assessment of the
Findings of Fact

            Ferrara
first challenges the finding that he locked the gate and failed to provide
others with a key or means of access to the property.  He cites to his own testimony that the lock
belonged to IP, who owned adjoining property. 
The trial court heard testimony from Hays, Michael Moore, and neighbor
Ray Littlejohn that Ferrara was the person denying access to the property.  Hays also contacted Mary Kay Jones at IP who
said Ferrara allowed her to put a lock on the gate, but that the lock was not
on the gate when she next visited the property. 
At the time of trial, there was still a lock on the gate to which the
Moores did not have a key.  The trial
court, as trier of fact and sole judge of Ferrara’s credibility, could have
determined either that the lock currently on the gate belonged to Ferrara, or
that Ferrara had the key to the lock placed by IP and had failed to provide a
copy to the Moores, thereby blocking their access to the easement.  

            The
next challenged finding is that Ferrara “felled large pine trees and pine logs
across the access road, as shown in Plaintiff’s Exhibit 10, making it
impossible to travel across the easement.” 
Hays testified that Ferrara cut trees on his property and left them
strewn across the easement.  Moore stated,
“The easement still has all this fallen lumber on it.”  A picture included as evidence demonstrates
that the easement could not be traversed by car after the act.  Ferrara confirmed the trial court’s finding
during his following cross-examination of Hays:

            Q.        [By Ferrara] . . . Was those trees on my
property?

 

            A.        They were on -- probably were, probably
on the easement.  They were on the
easement property.  Now whether they were
property line trees between the [neighbor] and your easement road, I really can’t
say one way or the other . . . . 

 

            Q.        Well, it would be discourteous to clear
my property fence line and throw it on someone else’s property.  Would you agree to that?

 

            A.        I would agree to that. 

 

            Q.        Okay.  So it would be proper to clear my fence line
with my debris and put it on my property instead of someone else’s
property.  Would you agree to that?

 

Ferrara’s questioning insinuated
that he cut down the trees and placed them across the easement, and was
attempting to seek Hays’ approval that it was the right thing to do, as opposed
to placing his trees on his neighbor’s property.  We find the trial court’s finding was
supported by legally and factually sufficient evidence.  

            Another
challenged finding is that Ferrara “erected a barbed wire fence (not a gate)
across the northern end of the access road as shown in Exhibit 9.  This fence also made the easement impassable,
even if a key had been provided to the gate on the south end.”  Exhibit 9 depicts five wooden posts placed
across the easement connected with barbed wire.  Hays testified this “gate” could not be
opened, and Moore stated “it’s a six foot tall barbed wire fence wired to the
post.  So that is a barrier” and
clarified the wire was “stapled to the fence post.”  Ferrara did not contradict these
statements.  

            Taking
the above findings into consideration, the judge entered the following
complained-of findings:  “Ferrara by his
actions completely closed off access to the easement by adjoining landowners,”
and “[f]ollowing its construction, Defendant Ferrara locked the gate and kept
it locked at all times.”  As explained
above, the trial court’s finding that Ferrara restricted access to adjoining
neighbors by locking the gate was based on sufficient evidence.  Because Ferrara built the gate in 2006, and
argued that no one else had accessed the easement since that time when claiming
the easement had been abandoned, the trial court was free to find that the gate
was locked “at all times.”   

            Next,
the trial record contains a letter written to Ferrara asking him to remove
barriers to the easement.  Ferrara
challenges the court’s finding that he refused to remove the obstructions
following receipt of the May 2009 letter. 
The trial court’s findings were supported by testimony from Hays and Michael
Moore that the easement was still being blocked by gates, fences, and felled
trees.  

            Ferrara
also challenges the finding that the Moores expended $4,500.00 in attorney’s
fees, and that the fees were reasonable and necessary.  The Moores’ counsel testified he charged “a
fair and reasonable rate” of $300.00 per hour and spent twenty hours on the
case, yielding a $6,000.00 fee.  It
appears that the trial court reduced the attorney’s fees to $4,500.00 after
discounting for time spent in “pursuit of tortuous [sic] damages.”  We find that the trial court’s fee award was
supported by legally and factually sufficient evidence.  

            The
finding that it would cost $800.00 to clear the easement of felled trees and
other obstructions is also challenged. 
This finding was based on Hays’ testimony that he would have to perform
work with a bulldozer at the rate of $100.00 per hour for eight hours in order
to clear the easement.  This finding
remains uncontroverted.[6]  

            While
there is no error contained in the above findings because they are supported by
legally and factually sufficient evidence, a few of the court’s findings are
technically incorrect.  First, the court
found that the Moores met with Ferrara on numerous occasions, orally requested
that he remove obstructions from the road and allow them access to their
properties, and that Ferrara refused on each occasion.  Michael Moore testified he pleaded with
Ferrara twice to allow him access to the easement.  Ferrara’s contention on appeal is that “[t]wo
times is twice, not ‘numerous times.’” 
Although the evidence shows Hays talked to Ferrara “five or six times”
to tell him he could not deny access, the finding that Michael Moore talked to
Ferrara on numerous occasions is not supported by the evidence.  

            Also,
Ferrara challenged the finding that the Moores sent a demand letter to Ferrara
threatening suit unless the obstructions were removed.  Exhibit 13 in the trial court’s record
contains a letter from Jeff W. Mays written on May 22, 2009, that was sent to
Ferrara.  The letter informs Ferrara of
the nature of the easement and obstructions, and threatens suit unless access
to the easement is allowed.  However, the
letter clarifies that Hays, rather than the Moores, hired the attorney that
sent the demand letter.  Thus, the trial
court’s finding is in error.  

            Ferrara
failed to brief the issue of harm.  It is
axiomatic that we may not reverse the trial court’s judgment based on these two
technically incorrect findings of fact unless we can determine the errors “probably
caused the rendition of an improper judgment.”  Tex. R. App. P. 44.1(a).  Because we find these errors had no effect
upon the judgment, as the conclusions of law and resulting judgment could be
made in the absence of such findings, Ferrara suffered no harm.  Thus, we will not reverse the trial court’s
judgment based on these points of error. 


IV.       The Issue of Attorney
Fee Segregation Was Not Preserved

            Ferrara
complains in his appellate brief that Moore’s counsel “did not segregate the
time that he spent on unspecified tort claims, time spent on injunction issues
or time spent on unpled declaratory damage issues.”  We find that he has failed to preserve this
point of error. 

            Judicial
economy requires that a trial court have the opportunity to correct an error
before an appeal proceeds.  In re
C.O.S., 988 S.W.2d 760, 765 (Tex. 1999). 
“As a prerequisite to presenting a complaint for appellate review, the
record must show that:  (1) the complaint
was made to the trial court by a timely request, objection, or motion.”  Tex.
R. App. P. 33.1.  A motion for new trial or exception to
the judgment provides the trial court with an opportunity to hear and rule on
the movant’s claims.  Robertson v. Gregg County, No. 06-09-00062-CV,
2009 WL 2971763, at *1 (Tex. App.––Texarkana Sept. 18, 2009, no pet.) (mem.
op.) (citing Gerdes v. Kennamer, 155 S.W.3d 523, 532 (Tex. App.—Corpus
Christi 2004, pet. denied)).  We must
first address whether an objection below was necessary because the pleadings in
this case did not necessarily invoke the Declaratory Judgments Act (Act) upon
which the Moores rely to sustain the judgment awarding fees.  

            Attorney’s
fees are recoverable in an action only if they are explicitly allowed by a statute,
or if they are provided for in a contract between the parties.  New
Amsterdam Cas. Co. v. Tex. Indus., Inc., 414 S.W.2d 914, 915 (Tex. 1967); Canales v. Zapatero, 773 S.W.2d 659, 660
(Tex. App.––San Antonio 1989, writ denied). 
The Act provides “[a] person interested under a deed . . . may have
determined any question of construction or validity arising under the [deed] .
. . and obtain a declaration of rights, status, or other legal relations
thereunder.”  Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (Vernon 2008).  A claimant successful under this Act is
entitled to “reasonable and necessary attorney’s fees as are equitable and
just.”  Tex.
Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008).  Citation to or denomination of the suit as one
brought under the Act is not a prerequisite to entitlement to attorney’s fees
under the Act.  Canales, 773 S.W.2d 659; GeoChem
Tech Corp. v. Verseckes, 962 S.W.2d 541 (Tex. Crim. App. 1998).  From the briefs, it appears that Ferrara
concedes that the Moores’ claims fell within the Act and that they are entitled
to some attorney’s fees.  The question is
how much?   

            In
Canales, our sister court ruled that
it was not necessary to object to the issue of segregation to the trial court
in order to preserve the issue on appeal where the pleadings did not clearly
refer to the Act and counsel was not aware that entitlement under the Act was
being sought.[7]  773 S.W.2d at 662.  

            In
our case, the following exchange occurred at trial:

            THE
COURT:  All right.  Mr. Davis, you have made a request for
attorney’s fees.  Can you quote me to a
statutory or common law basis for the award of attorney’s fees in a case of
this nature?

 

            MR.
DAVIS:  Yes, sir.  Judge, I believe that would fall under the Declaratory
Judgment [sic] Act, Civil Practice and Remedies Code 37.009.  A case that is pretty well on point would be Canalas vs. Zapatero, 773 S.W.2d 659. 

 

No objection to attorney’s fees
was made during trial by Ferrara.   

            A
motion for new trial was filed after the award was issued.  In the motion, Ferrara complained that the
attorney’s fees were not reasonable or necessary, but made no complaint that
the pleadings contained causes of action that did not support attorney’s fees,
raising notice for a need to segregate attorney’s fees.  Ferrara had an opportunity to complain of
failure to segregate attorney’s fees, but did not take advantage of such
opportunity.  We find he failed to
preserve this error for our review.  

            Ferrara’s
objection by the motion for new trial that the attorney’s fees awarded were not
reasonable or necessary is not the same as that urged on appeal and therefore presents
nothing for review.  Holland v. Hayden, 901 S.W.2d 763, 765 (Tex. App.—Houston [14th
Dist.] 1995, writ denied); Haryanto v.
Saeed, 860 S.W.2d 913, 921 (Tex. App.—Houston [14th Dist.] 1993, writ
denied) (en banc).  Complaints and
arguments on appeal must correspond with the complaint made at the trial court
level.  Century 21 Real Estate Corp. v. Hometown Real
Estate Co., 890 S.W.2d 118, 124 (Tex. App.––Texarkana 1994, writ denied).  Ferrara’s point of error on appeal does not
comport with the complaint presented to the trial court in the motion for new
trial, supporting our conclusion that it was not preserved. 

            Finally,
even if the issue was properly preserved, it appears the trial judge attempted
to segregate the attorney’s fee for the declaratory judgment by requesting
further information from counsel.  Based
on counsel’s statements that he spent fifteen hours preparing for the
declaratory judgment, including the injunction, whereas the other five hours
were spent on the damage claim, the trial court awarded a fee of $4,500.00,
calculated at fifteen hours at an hourly rate of $300.00.  We overrule this point of error.  

V.        Issue of Limiting Ferrara’s
Re-Cross Examination 

            During the second
re-cross examination of Michael Moore, the following exchange occurred:

            Q.        (By Ferrara) You went to your property
sometime before and after that to look at your property, correct?

 

            MR.
DAVIS:  Objection. 

 

            THE
COURT:  I’ll sustain the objection. 

 

            MR.
FERRARA:  Okay. 

 

            THE
COURT:  The scope of redirect means the
only thing he asked him was about this instrument.  So actually the only thing you can cross
examine is about this instrument.  You’ve
already had an opportunity to cross examine so this is called recross
examination.  

 

            Q.        [by Mr. Ferrara]  That instrument states a well-maintained
road, and are you saying that that road that you went on to look at your land
was well maintained?

 

            MR.
DAVIS:  Objection.  Exceeds the scope.

 

            THE
COURT:  Sustained. 

 

For the first time on appeal,
Ferrara argues that the trial court improperly limited Ferrara’s cross-examination
because Rule 611(b) of the Texas Rules of Evidence states that a witness may be
cross-examined on any relevant matter.  Tex. R. Evid. 611(b).  The record shows that Moore had been fully
cross-examined by Ferrara for what appears to be seventeen pages of about 100
pages of actual testimony; Ferrara had passed the witness, and this further
interrogation was re-cross-examination. 
The trial court had previously noted that Ferrara’s interrogation was
needlessly consuming time, taking from thirty seconds to a minute between each
question he asked.  It is the
responsibility of the trial court to exercise reasonable control over the mode
and order of interrogation of witnesses and to avoid needless consumption of
time.  Tex.
R. Evid. 611(a).  The conduct and
extent of cross-examination is entrusted to the sound discretion of the trial
court, and its ruling will not be disturbed unless it is arbitrarily and
unreasonably made.  Mendoza v. Varon, 563 S.W.2d 646, 650 (Tex. Civ. App.––Dallas 1978,
writ ref’d n.r.e).  Further, this
argument was not presented to the trial court in Ferrara’s motion for new
trial, or otherwise; Ferrara has failed to preserve this issue for our
review.  Tex. R. App. P. 33.1.  We overrule his last point of error.  

VI.       Conclusion 

            We
affirm the trial court’s judgment.  

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

 

CONCURRING AND PARTIAL DISSENTING OPINION

            I
concur in part and dissent in part with the majority opinion.  My dissent is restricted to the finding that
Ferrara does not possess the right to erect a gate or gates across the easement
itself.[8]

            Both
the dominant tract owned by the Moores and the subservient tract owned by Joseph
Ferrara were originally parts of a called 111.29-acre tract which belonged to
Brian Hayes and wife, Donna Hayes, and James Watson and wife, Rebecca Watson (“Hayes,
et al.”). Hayes, et al. made four conveyances on August 1, 1984, out of the
111.29-acre tract to the Texas Veterans Land Board.  Among these conveyances was the tract which
eventually came to be owned by Ferrara.[9]  The portion of the tract which remained after
those four conveyances is the one sold twenty-five years later to the Moores. 

            Each
of these conveyances followed the same format. 
Each makes reference to an “Exhibit A” for the description of the
property to be conveyed.  These deeds
each also recite,

[T]here is also conveyed to Grantee, its
successors and assigns, a non-exclusive right-of-way for purposes of ingress
and egress between a public road and the tract conveyed and described herein.
This access easement is more particularly described in Exhibit “B” which is
attached hereto and made a part hereof for all purposes.  

 

Within each of those exhibit Bs,
after the description of the easement being conveyed, they continue by stating––seemingly
almost as an afterthought––that the tract being conveyed is “subject to the
following described easement” followed by a metes and bounds description of the
portion of the conveyed tract which is subject to an easement.  No purpose for the easement is recited and no
further description of the rights granted or retained is contained in the
documents.[10]

            An
easement is an interest in real estate that authorizes the holder of the
dominant estate to use property for a particular purpose.  Koelsch
v. Indus. Gas Supply Corp., 132 S.W.3d 494, 497 (Tex. App.––Houston [1st
Dist.] 2004, pet. denied) (citing Marcus
Cable, 90 S.W.3d at 700).  The
meanings of easements are interpreted in the same fashion and under the same
basic principles that are applied to the construction of a contract.  Marcus
Cable, 90 S.W.3d at 700; DeWitt County
Elec. Coop. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999); Koelsch, 132 S.W.3d at 497.  “When
a contract is not ambiguous, the construction of the written instrument is a
question of law for the court.”  MCI Telecomms. Corp. v. Tex. Utils. Elec.
Co., 995 S.W.2d 647, 650 (Tex. 1999).  “The primary concern of a court in construing
a written contract is to ascertain the true intent of the parties as expressed
in the instrument.  If a written contract
is so worded that it can be given a definite or certain legal meaning, then it
is not ambiguous.”  Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464
(Tex. 1998).  Accordingly, the intent of
the parties, as expressed in the grant, determines the scope of the interest
conveyed.  Marcus Cable, 90 S.W.3d at 700–01; Koelsch, 132 S.W.3d at 497–98.  To interpret the parties’ intentions
adequately and to discern the scope of the rights conveyed to the easement
holder, one must focus on the terms of the granting language.  See
Marcus Cable, 90 S.W.3d at 701 (citing Houston
Pipe Line Co. v. Dwyer, 374 S.W.2d 662, 664–65 (Tex. 1964)).  An easement “should be interpreted to give
effect to the intention of the parties ascertaining from the language used in
the instrument, or the circumstances surrounding the creation of the servitude,
and to carry out the purpose for which it was created.”  Id.  We rely solely on the written terms of the
easement unless the language is ambiguous.  Koelsch,
132 S.W.3d at 498.  When the terms of the
grant of an easement are not defined, we are to apply their “plain, ordinary,
and generally accepted meaning.”  Marcus Cable, 90 S.W.3d at 701.  The rules regarding construction of deeds
generally apply in the construction of easements.  Tex.
Parks & Wildlife Dep’t v. Callaway, 971 S.W.2d 145, 149 n.3 (Tex. App.––Austin
1998, no pet.).

            Any
grant of an easement necessarily carries with it the right to do such things as
are reasonably necessary for the full enjoyment of the easement granted.  Harris
v. Phillips Pipe Line Co., 517 S.W.2d 361 (Tex. Civ. App.––Austin 1974,
writ ref’d n.r.e.).  We must take into
account that 

[e]very easement carries with it the right of
doing whatever is reasonably necessary for the full enjoyment of the easement
itself.  Extent of such incidental rights
depends upon the purpose and extent of the grant itself.  Such right is limited and must be exercised in such a reasonable manner as not
injuriously to increase the burden upon the owner of the fee.  Nothing passes by implication as incidental to
a grant except what is reasonably necessary to its fair enjoyment.  What is reasonably necessary for the full
enjoyment of the easement will be determined by a construction of the language
of the express grant, considered in the light of the surrounding circumstances.

 

Bland Lake Fishing & Hunting Club v. Fisher, 311 S.W.2d 710,
715–16 (Tex. Civ. App.––Beaumont 1958, no writ) (emphasis added).

            How
could the prohibition against gates being installed at the entrance and exit of
the roadway across Ferrara’s land increase the burden on the subservient
estate?  The tract imposed with the
easement (i.e., the subservient estate) here is not a small residential
building lot but is, rather, rural acreage. 
One would expect that one of the uses to which people could be commonly
expected to place such acreage tracts is the pasturage of livestock.  Should Ferrara (or some subsequent owner of
the tract) desire to raise livestock but is prohibited from erecting gates
where the easement enters and exits his property, he may well be required to
either fence off the entire easement property from the balance of the tract
(which would effectively deny the owner of the subservient estate from the
reasonable use of the portion of the tract subject to the easement) or go to the
expense of installing and maintaining cattle guards on the roadway easement.  Given the paucity of direction in the wording
of the easement itself, such a requirement would unreasonably burden the owner
of the subservient estate.[11]  Granted, there is no evidence that such
pasturage use is now intended or that a future owner has such use in mind, but
that lack of evidence is irrelevant; this example is employed solely to
demonstrate that the prohibition against gates does increase the burden on the
subservient estate.  If the lack of
evidence of that potential intended use is important, it would likewise be
important that there is no evidence of the existence or nonexistence of gates
on the roadway at the time the easement
was created.  Such evidence of either
situation is not relevant to a determination of the rights granted under the
easement.  What is important is what the
easement says.

            The
Moores rely on (and the majority cites) Gerstner
v. Wilhelm, 584 S.W.2d 955, 957 (Tex. Civ. App.––Austin 1979, writ dism’d),
for the proposition that the trial court had the authority to enjoin Ferrara
from putting gates across the easement as it enters and exits his property.  However, in contrast to the easement the
Moores claim here, the easement in Gerstner
called for “the free and uninterrupted use, liberty and easement of passing
in and along a certain passageway or road across the said premises . . . and
being 40 feet in width and to use such passageway or road at all times in
common with the Grantee. . . .”  Id. 
This case is distinguishable from Gerstner
in two respects:  (1) in this case, there
was no such expansive or delineated grant of rights in the easement as in Gerstner, and (2) unlike this case, Gerstner dealt with an ambiguous grant
of easement.  In Gerstner, the trial judge provided an instruction to the jury (not
quoted in the opinion) as to the meaning of “free and uninterrupted.”  The opinion in Gerstner does recite that, “Because of the language of the easement
and the factual circumstances surrounding
the grant, the court properly entered judgment that Gerstner remove the
fences and gates.”  Id. at 959 (emphasis added). 
Since the issue of the easement was submitted to the jury in the Gerstner case to make factual
determinations, it must have been deemed to have been an ambiguous grant
because juries have no role in ruling on issues of law.  In the circumstance in which there is an
ambiguity, any such ambiguity is to be resolved against the grantor.  Dwyer,
374 S.W.2d at 665.  Further, where an
instrument is capable of two reasonable constructions, it will be strictly
construed against the author.  Harris, 517 S.W.2d at 364.  Here, the Moores stand in the shoes of Hayes,
et al., the drafter of the easement. 

            One
should point out that in the case at bar here, neither side alleges that any
ambiguity exists in the grant of the easement.  Under contract law (which, as pointed out
above, applies as to easements), if ambiguity of the instrument is not pled,
then its construction is solely a question of law and not of fact; questions of
law are reviewed de novo.  Eastman Software, Inc. v. Tex. Commerce
Bank, Nat’l Ass’n, 28 S.W.3d 79, 84 (Tex. App.––Texarkana 2000, pet. denied).  

            Because
the grant is in general terms, the grantees’ dominant estate is entitled only
to rights sufficient to effect the purpose of the easement.  See Coleman v. Forister, 514 S.W.2d 899, 903 (Tex. 1974).  As to implication of easement rights not
specifically granted by the instrument creating the easement, a court can “imply
only those rights reasonably necessary to the fair enjoyment of the easement
with as little burden as possible to the servient owner.”  Lakeside
Launches, Inc. v. Austin Yacht Club, Inc., 750 S.W.2d 868, 871 (Tex. App.––Austin
1988, writ denied) (citing Coleman,
514 S.W.2d at 903).  “Nothing passes by
implication as incidental to a grant of an easement except what is reasonably
necessary to its fair enjoyment.”  Kearney & Son v. Fancher, 401 S.W.2d
897, 903 (Tex. Civ. App.––Fort Worth 1966, writ ref’d n.r.e.).

            The
Moores brought this suit and it was their burden to provide evidence to support
each portion of their claim.  Although
they fully established their right to an easement, they failed to provide evidence
that fully-accessible gates could not be erected across it.  To imply that the easement which the Moores
own dictates that there be a prohibition against gates (to which the Moores
would have full access) erected across it is to violate the constraint against
imposing a greater burden than is reasonably necessary to effect the ingress
and egress purposes of the easement.  

            The
easement here does not specifically grant the dominant estate the right to an
easement “free and uninterrupted” by gates.  The grant provides only for ingress and egress
to the dominant estate.  To find a grant
of unrestricted passage, therefore, it would be necessary to read terms into
the four corners of the document which do not exist (i.e., the right to drive a
car the length of the easement without having to get out and open a gate); this
cannot be done under the circumstances of this case.  See id.; Marcus Cable Assocs., 90 S.W.3d at 700; Koelsch, 132 S.W.3d at 498. 

            Accordingly, I believe
the trial court erred in enjoining Ferrara from erecting gates on the easement
so long as the owner of the Moores’ tract were given access rights through
those gates.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          July
6, 2010

Date Decided:             July
28, 2010

 

 











[1]Ferrara
testified about an alleged instance of vandalism to the gate.  There was no testimony that the gate was
built in response to vandalism or unauthorized access.  

 





[2]We
do not agree with Ferrara’s contention that the term “nonexclusive” means that
the Moores cannot have free and unrestricted access to the easement.  See Calvert,
875 S.W.2d at 485.  

 





[3]Ferrara
points to the memorandum opinion of Barrow
in support of his position.  Barrow, 2007 WL 3293712.  Barrow’s land was subject to a nonexclusive
roadway easement providing Pickett a second means of entry onto his undeveloped
land.  Id. at *1.  The easement was
for “ingress, egress, and access on, over, and across the Easement Tract.”  Id.  In order to utilize his property as a hay
field and pasture for horses and cattle, Barrow erected a gate across an access
easement allowing Pickett access to his property.  Id. at
**1–2.  Our sister court held that the
trial court erred in enjoining Barrow from placing gates along the access
road.  Id. at *2.  Because the gate
was not secured to prohibit Pickett’s access, the court found the interference
was not unreasonable.  Id. at **2, 4.  Pickett had only to stop, open and shut the
gate.  Next, our sister court looked to
the language of the grant, which only allowed for access to the dominant estate
and nothing more.  Id. at *3.  In this case, in
addition to language similar to the language in Barrow, the easement provided that the grantor and his assigns were
to “have the non-exclusive right to use any portion of this easement.”  Further, gates had been erected on the
easement in the past.  Id. at *4 n.3.  As to the use of the property, the court
discussed the fact that Barrow would be unable to properly utilize his land for
horse and cattle operations unless he could maintain the gate.  Id. at
*4.  Interestingly, while our sister
court attempts to shy away from the analysis applied in Arden, its reasoning and accompanying footnotes indicate that it
conducted the Arden analysis.  Id.;
see generally Arden, 221 S.W. 265. 

 





[4]The
dissenting opinion to this portion of the opinion would rule that the trial
court erred in enjoining the erection of gates at the easement because it would
unreasonably burden the use of the servient estate.  Because there is no evidence in this record of
any likely burden on the servient estate, any conclusion that there is such a
burden would require speculation.  There
is also no evidence that gates would be the only way to allow use of the
servient estate for cattle without fully fencing the easement.  Cattle guards might be an option, but that,
too, is speculation.

 





[5]Ferrara
also cites Stout v. Christian, 593
S.W.2d 146 (Tex. Civ. App.––Austin 1980, no writ), as authorizing the placement
of gates by the servient estate owner.  A
major difference with the facts of this case is that there the easement
authorized gates of “livestock proof construction.”  The owner of the servient estate erected
gates and provided keys to the dominant estate holder.  The opinion found that the trial court did
not abuse discretion by allowing the gates in that instance and distinguished
their earlier case of Carleton v. Dierks,
195 S.W.2d 834 (Tex. Civ. App.––Austin 1946, no writ), in which the same
appellate court had found the facts in Carleton
authorized a finding that erecting such locked gates interfered with the
dominant estate holder’s lawful use of the easement.  





[6]Without
citation to any supporting authority, the brief merely argues that the Moores
have not yet expended the money to clear the property, and thus have not been
damaged.  It is apparent that the road
will have to be cleared of the trees and three years’ worth of debris that has
accumulated on the easement.    





[7]In
fact, counsel in Canales objected at
trial that no relief under the Act was made. 
The court found these objections sufficient to preserve error.  773 S.W.2d
at 662 n.2. 





[8]When
looking at the final judgment granted by the trial court, it is necessary for
the purpose of this dissent to presume certain things.  The judgment states that it finds that an
easement exists over and across the real estate described on Exhibit “A” as an
easement appurtenant to the realty described in Exhibit “B.”  Neither such exhibit was attached to the
judgment.  It is assumed that Exhibit “A”
was supposed to be a description of the portion of a roadway which traveled
across the tract of land belonging to Ferrara and that Exhibit “B” was supposed
to contain a description of the land acquired by the Moores.





[9]The
fifth and final tract remained owned by Hayes, et al. until it was sold by them
to the Moores in 2009.  During the
intervening period, Hayes, et al. sold rocks and gravel from the remaining
tract.

 





[10]In
challenging the right of the Moores to cross his land, Ferrara puts himself in
much the same position of the man who cuts off the limb upon which he is
standing.  In order for Ferrara to gain
access to a public road, Ferrara must rely on easements across two other tracts
of land created by deeds almost identical to the one upon which the Moores rely
in attempting to establish their right of way over Ferrara’s lands.  Had Ferrara been successful in combating the
Moores’ attempt to enforce the easement, he would have been hard pressed to
insist that the easement granting him access over his neighbors’ property was
effective to grant him access to his own tract. 
“What is sauce for the goose is sauce for the gander.”  Comm’n
for Lawyer Discipline v. Benton, 980 S.W.2d 425, 451 (Tex. 1998).





[11]In
this day of the automobile, when one need not leave their car to purchase food
to eat or obtain money from our banks (and by some news accounts, even to be
married), we tend to think that it is necessary for us to do everything from
our automobiles.  I maintain, however,
that it is not unreasonable to exit from an automobile and open a gate. Doing
everything from the confines of our cars falls among the luxuries of our
society.